UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| DESIGN BASICS, LLC, | § | Case No. 1:17-00449-SJD |
| | § | |
| Plaintiff, | § | District Judge Susan J. Dlott |
| | § | Magistrate Judge |
| v. | § | |
| | § | |
| LANDMARK COMMUNITIES, | § | |
| INC., et al., | § | |
| Defendants. | § | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Design Basics, LLC ("DB" or "Plaintiff") files this brief to its Motion for Partial Summary Judgment on two issues; Copyright Validity and that there is no evidence to support ten (10) of the Landmark Defendants' affirmative defenses, and that they are inapplicable or irrelevant to DB's claims.[1]

### I. INTRODUCTION AND RELEVANT FACTUAL BACKGROUND

**A. The Plaintiff and the Copyrighted Works**

This is a copyright infringement case brought by DB, a home plan design company based in Omaha, Nebraska, against several different entity and individual defendants. The Defendants,

---

[1] It should be noted that DB was recently involved in a separate copyright infringement action before this Honorable Court, *Design Basics, LLC, et. al. v. Ashford Homes, LLC, et. al*, CN: 1:17-cv-00273-SJD. Although it was resolved amicably, the *Ashford Homes* case involved the same legal issues and analogous facts present in this suit – as well as the same counsel representing both Plaintiff and Defendants – resulting in similar discovery efforts performed. As such, and with the exception of referencing facts specific to the present lawsuit – and the removal of certain legal arguments regarding matters which this Honorable Court has already ruled are *issues of fact* to be determined by a jury – the instant memorandum is substantially identical to the one filed in *Ashford Homes*. See Case 1:17-cv-00273-SJD, Doc # 59, Filed 06/18/18 PAGEID #1037-1057.

Landmark Communities, Inc. ("Landmark"), Berkey Homes, LLC ("Berkey"), Kelly Homes, Inc. ("Kelly"), PR Properties, Inc. ("PRP"), Orchard Meadows, LLC ("Orchard"), Paul A. Berding, individually ("P. Berding"), Matthew P. Berding, individually ("M. Berding"), and Ronald W. Gerhlich, individually will hereinafter be referred to collectively as the "Landmark Defendants." The Defendants, Gerhlich Guilders, LLC ("GBL"), the Gehrlich Group, Inc. ("GGI"), the Gehrlich Group, LLC ("GGL"), Gerhlich Homes, Inc. ("GHI"), Gehrlich Properties, LLC ("GPL"), Keith M. Gehrlich, individually ("K. Gehrlich"), Jeffrey A. Gerhlich, individually ("J. Gerhlic") will hereinafter be referred to collectively as the "Gerhlich Defendants." Because they failed to plead or otherwise defend themselves in this lawsuit – as required by law – the Court entered Default against the Gerhlich Defendants on November 15, 2017 [See CM/ECF Doc. # 50, PAGEID # 297].

DB, formerly known as Design Basics, Inc., is a Nebraska company that has been engaged in the business of creating, marketing, publishing, and licensing the use of architectural works since the early 1980's. **(CM/ECF Doc. # 63, PAGEID # 639, Dec. of Pat Carmichael, ¶ 3).** For over three decades, DB has marketed its original custom and ready-made home plans for single and multi-family homes through plan catalogs, home building industry publications brokerage marketing partners, client-specific publications, and the internet. **Id.** DB's customers license the home plans for marketing and construction purposes. DB also assists its builder clientele with their marketing efforts to potential homebuyers, and customizes home plans[2] for its builder customers. **Id at PAGEID # 641**. DB is a leader in the residential home plan industry, and has received national recognition through awards of various honors both in the home building and business industries. **Id. at PAGEID #642**. However, over the past 15 years, DB has seen a sharp decline in

---

[2] Which DB refers to as a "custom change order."

its annual plan licensing revenue, which has resulted in DB's employee base shrinking by 75%. Based on its sales records and the information it has uncovered of known plan theft, DB's precipitous decline in license sales directly corresponds with the rise of known (and suspected) theft of its plans. **Id**.

In this case, for example, both sets of Defendants have, at various times between 1990 and 2003, purchased design plan catalogs and construction licenses from DB. **(CM/ECF Doc. # 58-11).** However, none of the Defendants purchased licenses for any of the seven (7) specific works-at-issue in this case. **Id**.

Despite this unprecedented decline in its annual revenues, DB continues to create, market, and license new original home plans. **(CM/ECF Doc. # 63, PAGEID # 643, Dec. of Pat Carmichael, ¶ 22).** DB has authored approximately 350 new original architectural works that have been put into service. **Id**. Because DB is in the business of creating, marketing, and selling licenses to use their architectural works, the value of DB is based almost solely on the intellectual property it has created over the last 30 years. **Id**.

Every work within DB's residential house plan portfolios is registered with the U.S. Copyright Office before being marketed in any way. **(CM/ECF Doc. # 63, PAGEID # 639, Dec. of Pat Carmichael, ¶ 3).** Among DB's registered works are the seven (7) designs at issue in this case (the "Copyrighted Works"): DB's "Paterson," the "Bermier," the "Ingram," the "Pawnee Point," the "Collier," the "Linden," and the "Lancaster." **(See CM/ECF Doc's # 63, PAGEID # 643, (Dec of Pat Carmichael, ¶ 23) and CM/ECF Doc.'s # 63-1 to 63-7)**. Registration certificates and deposit materials for these works are attached as **Exhibits 1 - 7**, respectively. **CM/ECF Doc.'s # 63-1 to 63-7)**.

B.  **Defendants' Piracy of Plaintiff's Designs**

On July 1, 2014, in the course of investigating claims of infringement for another builder, DB saw several infringements of its works on the Landmark Defendants' website, www.berkeyhomes.com. **(CM/ECF Doc. # 63, PAGEID # 644-45, Dec. of Pat Carmichael, ¶ 31).** Specifically, DB saw some postings of infringing designs of the following works: "Paterson," the "Bermier," the "Ingram," the "Pawnee Point," the "Collier," the "Linden," and the "Lancaster." **Id.**

DB sued Defendants for violations of the Copyright Act and Digital Millennium Copyright Act ("DMCA"). (See DB's Original Complaint, Doc #1, PAGEID # 1). During of the discovery phase of litigation, it became clear that Defendants' infringing activities extended far beyond the knockoffs posted online and listed in DB's Original Complaint. Through inspection of CAD drawings and blueprints produced by the Landmark Defendants during discovery – as well as independent research of property records for homes built and sold by the Gehrlich Defendants – DB uncovered that the Landmark Defendants constructed, marketed, and sold at least 274 three-dimensional infringing copies (knockoff houses) of the 7 Copyrighted Works and that the Gehrlich Defendants constructed, marketed, and sold at least 114 three-dimensional infringing copies. **(CM/ECF Doc. # 63, PAGEID # 644-45, Dec. of Pat Carmichael, ¶ 31).** DB later amended the complaint alleging these additional infringements of DB's copyright protected works. (See DB's First Amended Complaint, Doc. # 58, PAGEID #339).

4

### C. Motion for Partial Summary Judgment

To streamline this case for trial, DB now moves for partial summary judgment on the following issues:

> (1) DB's *ownership* of valid copyrights in the 7 works at issue; and
>
> (2) Ten of the Landmark Defendants' affirmative defenses.

Because there is no genuine issue of material fact regarding these issues, DB asks the Court to grant summary judgment on each of them.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact on the issue for which summary judgment is sought, such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Material facts are those that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Wimbush v. Wyeth*, 619 F.3d 632, 638 (6th Cir. 2010); *Ferreri v. City of Strongsville*, 1:10-CV-01014, 2011 WL 114331, at *10 (N.D. Ohio Jan. 13, 2011). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient . . ." *Id*. at 252. Where the moving party does not bear the burden of proof on the issue at trial, it may discharge its burden of showing that no genuine issue of material fact remains by demonstrating that "there is an

absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Factual controversies are to be resolved in favor of the nonmovant – the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248.

### III. ARGUMENT

#### A. DB Owns Valid Copyrights in the Works-at-Issue

A plaintiff alleging copyright infringement must prove: (1) ownership of a valid copyright and (2) copying of the original elements of the copyright. *Feist Publin. Inv. v. Rural Tel. Serv. Co.*, 499 US 340 (1991); *ATC Dist. Group, Inc. v. Whatever It Takes Transmissions & Parts, Inc.*, 402 F.3d 700, 705 (6th Cir. 2005). DB is entitled to partial summary judgment regarding their ownership of the Copyrighted Works. Plaintiffs hold certificates of copyright registration issued by the United States Copyright Office for each of the 7 Copyrighted Works at issue. (See Exhibits 1 - 7). These certificates of registration are *prima facie* evidence of the validity of the copyrights and of the facts stated in the certificates. 17 U.S.C. § 410(c); *See also Lexmark Int'l. v. Static Control Components, Inc.*, 387 F.3d 522, 534 (6th Cir. 2004).

DB presents evidence sufficient to show as a matter of law that DB is the author of each of the Copyrighted Works, the Copyrighted Works are original to DB, and the Copyrighted Works have the requisite degree of creativity for copyright protection.

##### i. DB's Certificates of Registration Establish That It is the Owner of Valid Copyrights

DB is and has been engaged in the business of creating and publishing architectural house designs, and is the author of, and at all times relevant to this claim, has been and is now the sole owner and proprietor of all right, title, and interest in and to the copyrights in certain home

6

plans/designs published in various catalogs. **(CM/ECF Doc. # 63, PAGEID # 639 Dec. of Pat Carmichael, ¶ 3).**

Originally, DB was formed and established as a corporation 30 years ago by its founder and former president, Dennis Brozak ("Brozak"). **Id**. At that time, Plaintiff was named Design Basics, Inc. **Id**. Design Basics, Inc. is the author listed on the registration certificates for the "Paterson," the "Bermier," the "Ingram," the "Pawnee Point," the "Collier," the "Linden," and the "Lancaster." (**See CM/ECF Doc's # 63 and 63-1 to 63-7, PAGEID 643, 648, 661, 663, 683, 685, 702, 716, 718, 734, 737, and 753, (Dec. of Pat Carmichael, ¶ 23, and Exhibits 1 – 7**).

In 2009, as Brozak was about to retire, and the company was about to shut its doors, Patrick Carmichael and Myles Sherman purchased Design Basics, Inc. **(CM/ECF Doc. # 63, PAGEID # 640, Dec. of Pat Carmichael, ¶¶ 4-7).** After purchasing Design Basics, Inc., Mr. Carmichael and Mr. Sherman restructured Design Basics, Inc. into Design Basics, L.L.C. **Id at PAGEID # 640-41.** During the purchasing process, Mr. Carmichael and Mr. Sherman created DBI Holdings, L.L.C., a Nebraska limited liability company, which was merged with Design Basics, Inc. in accordance with Nebraska law. **Id at PAGEID # 640-41.** By operation of law, the resulting, combined, surviving entity – DB – is a limited liability company that owns all the assets of the previously separate, pre-merger entities, including all the intellectual property of Design Basics, Inc. **Id at PAGEID # 640-41.** The copyright ownership of Design Basics, Inc. passed from it to DB "by operation of law" as this phrase is used in 17 U.S.C. § 204(a). **Id at PAGEID # 640-41.** Therefore, DB is the lawful owner of the copyrights in the Works at issue in this case.

The certificates of registration are *prima facie* evidence that DB owns valid copyrights. In any judicial proceeding, "the certificate of a registration made before or within five years after first publication of the work shall constitute *prima facie* evidence of the validity of the copyright and

of the facts stated in the certificate." 17 U.S.C. § 410(c). The legislative history shows that the purpose of § 410(c) is to place the burden of challenging the validity of a copyright on the defendant:

> The plaintiff should not ordinarily be forced in the first instance to prove all of the multitude of facts that underline the validity of the copyright unless the defendant, by effectively challenging them, shifts the burden of doing so to the plaintiff.

H.R. Rep. No. 94-1476 (1976), reprinted in 1976 U.S.C.C.A.N. 5659, 5773. This statutory presumption is enforced in the Sixth Circuit. *Lexmark*, 387 F.3d at 534; see also *Tacori Enterprises v. Rego Mfg.*, 2008 U.S. Dist. LEXIS 73686, 2008 WL 4426343, * 21-22 (N.D. Ohio Sept. 25, 2008). DB can conclusively establish its ownership of a valid copyright on each of the Copyrighted Works at issue; thus summary judgment on the first element is warranted.

### ii. DB is the Owner of Valid Copyrights

In addition, and in the alternative to their reliance on the statutory presumption set out above, DB also presents summary judgment evidence that it is the author of the works at issue, and that these works qualify for copyright protection. The declaration of Pat Carmichael and the deposit materials authenticate the works themselves, and establish DB's authorship and originality of the Copyrighted Works.

Valid copyrights protect "original works of authorship." 17 U.S.C. § 102(a). To be "original," the work must have been independently created by the author, rather than copied from another work, and possess "at least some minimal degree of creativity." *Feist Publications, Inc. v. Rural Telephone Service Co*., 499 U.S. 340, 361 (1991). The "requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, 'no matter how crude, humble or obvious' it might be." *Id*.

Architectural designs are protected in two separate categories under the Copyright Act. Prior to 1990, architectural plans were protected only as technical drawings, under the statutory category of "pictorial, graphic and sculptural works" ("PGS") 17 U.S.C. § 101(a)(5). The statutory definition for such "PGS" works includes "diagrams, models, and technical drawings, including architectural plans." 17 U.S.C. § 101; *Scholz Design, Inc. v. Sard custom Homes, LLC*, 691 F.3d 182, 188-89 (2d Cir. 2012). *Frank Betz Assocs. v. J.O. Clark Construction*, 2010 U.S. Dist. LEXIS 53437 at * 28-31.

In 1988, the United States joined the Berne Convention for the Protection of Literary and Artistic Works, a longstanding copyright treaty. Congress passed the Architectural Works Copyright Protection Act of 1990 (the "AWCPA") to conform United States law to the Berne Convention and protect architectural works. *Scholz Design v. Sard*, 691 F.3d at 188, n.6. The AWCPA extended copyright protection to the design of the building itself. It added "architectural works" as a new category of protected works of authorship. 17 U.S.C. § 102(a)(8). It also added a definition of architectural works:

> An "architectural work" is the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings. The work includes the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features.

17 U.S.C. § 101. Under the AWCPA, building a structure from copyrighted plans and drawings without permission from the copyright owner is infringement. *Scholz Design*, 691 F.3d at 189-190.

Since 1990, the same architectural design qualifies for copyright protection under both 17 U.S.C. § 102(a)(5) (PGS works) and 17 U.S.C. § 102(a)(8) (architectural work). *Scholz Design*, 691 F.3d at 187. See also H.R. Rep. No. 101-735 (1990) ("House Report"), *reprinted in* 1990 U.S.C.C.A.N. 6935, 6950 ("An individual creating an architectural work by depicting that work

9

in plans or drawing[s] will have two separate copyrights, one in the architectural work (section 102(a)(8)), the other in the plans or drawings (section 102(a)(5)).").

A PGS work "must embody some creative authorship in its delineation or form." 37 C.F.R. § 202.10(a). An architectural work is original even though it may be made up of individual elements that are not themselves protectable. *See Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1296 (D.C. Cir. 2002). The legislative history of the AWCPA emphasized that architectural works were subject to the same standards of originality as all other copyrightable works:

> The proposed legislation incorporates the general standards of originality applicable for all other copyrightable subject matter. This standard "does not include requirements of novelty, ingenuity, or [a]esthetic merit." Subjective determinations of artistic or aesthetic merit are inappropriate and contrary to fundamental principles of copyright law.

House Report at 6952, *citing Bleistein v. Donaldson Lithographic Co.*, 188 U.S. 239 (1903).

There is a "minimal degree of creativity" in architectural designs, both as pictorial works, and to the designs themselves as architectural works. *See Scholz Design*, 691 F.3d at 192; *Richmond Homes Management, Inc. v. Raintree*, 862 F.Supp. 1517, 1523-24 (W.D. Va. 1994); *Balsamo/Olson Group, Inc. v. Bradley Place Ltd. P'ship*, 966 F.Supp. 757, 759, 761 (C.D. Ill. 1996); *Patriot Homes, Inc. v. Forest River Housing, Inc*., 548 F.Supp. 647 (N.D. Ind. 2008).

DB is the author of the 7 Copyrighted Works at issue in this case. Each of the Works has the level of creativity required for copyright protection. The plans and drawings deposited with the Copyright Office in connection with DB's registration of copyrights demonstrate that there is *at least* minimal creativity in these works.

Moreover, there is no evidence in this record – and Defendants cannot adduce any – to show (much less prove) that DB did not actually create the plans compiled in **Exhibits 1 – 7**. Indeed, in response to DB's request for admissions, Landmark, Berkey, and Kelly all admitted that

the "Certificates of Registration contained in Exhibits 1-7 are valid registrations." (**See CM/ECF Doc. # 64-1, PAGEID # 771, 773, and 775, Exhibit 8 (Defendants' Response to Request for Admissions)**).Consequently, there is no dispute that DB is the author owner of the Copyrighted Works. See 17 U.S.C. 201(a) (ownership initially vests in the author of a copyrighted work). Finally, there is no doubt or dispute that the Copyrighted Works possess the requisite degree of originality to be copyrightable. DB is, therefore, entitled to summary judgment on the issues of ownership and validity.

### B. The Landmark Defendants' Affirmative Defenses Fail

In their Answer to DB's First Amended Complaint, the Landmark Defendants alleged the following affirmative defenses: 1) failure to state a claim; 2) failure to join all necessary parties; 3) statute of limitations; 4) equitable estoppel, laches, acquiescence and/or waiver; 5) unclean hands; 6) "Defendants actions do not constitute infringement;" 7) invalid copyright; 8) fair use; 9) infringing plans are "not substantially similar;" and 10) "Defendants deny that they acted in a willful, intentional, reckless manner."

As set forth in more detail below, because the Landmark Defendants cannot produce any facts or other evidence supporting these affirmative defenses, such claims should be dismissed.

### i. Defendants' Third Affirmative Defense – Statute of Limitations

In their Answer, the Landmark Defendants allege that "Plaintiff's claims are barred in whole or in part by the applicable statute of limitations." **See Doc. # 59, PAGEID, 539**. The Landmark Defendants made this allegation without any statement of facts as to why DB's claims are "barred" by statute of limitations. To this date, the Landmark Defendants have failed or refused to show any evidence in support of this defense. In its written discovery requests, DB asked the Landmark Defendants to produce all documents relating to, concerning, evidencing, and/or

supporting "each and every affirmative defense raised by you in any answer to Plaintiff's Original and/or Amended Complaint." (**See CM/ECF Doc. # 64-2, PAGEID # 786, Exhibit 9 (Defendants' Response to Request for Production No. 24)**). In response to such request, the Landmark Defendants simply stated – without objection – "[s]ee enclosed *designs* documentation." **Id.** (emphasis added). However, the Landmark Defendants completely failed to state which documents were related to, concerned, evidenced, and/or supported their affirmative defense of statute of limitation. **Id.** Moreover, the documents the Landmark Defendants produced in response to DB's request for production comprised only 1) Landmark Defendants' blueprints, construction drawings, and/or line drawings for the Infringing Works at issue in this case, and 2) sales and financial documents relating to and/or concerning the houses constructed using the Infringing Works. Such documents in no way evidence, support, or relate in any way to the Landmark Defendants' third affirmative defense.

The Copyright Act's statute of limitations, 17 U.S.C. § 507(b), provides that "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." While the Copyright Act is silent as to when a copyright claim *accrues*, across the eleven circuit courts, there are two accepted "rules" interpreting this statute: the "discovery rule" and the "injury rule." Under the discovery rule, a cause of action accrues when the plaintiff discovers, *or with due diligence should have discovered,* the injury that forms the basis for the claim. Under the injury rule, a cause of action accrues at the moment of injury.

The Sixth Circuit has explicitly and repeatedly held that "[a] copyright-infringement claim 'accrues when a plaintiff knows of the potential violation or is chargeable with such knowledge.'" *Roger Miller Music, Inc. v. Sony/ATV Publishing, LLC*, 477 F.3d 383, 390 (6th Cir. 2007), *quoting Bridgeport Music, Inc. v. Ryme Syndicate Records*, 376 F.3d 615, 621 (6th Cir. 2004). Under the

law, DB had three years from the date they first knew of Defendants' infringing activity to file suit. DB first became aware that Defendants were infringing the Copyrighted Works on July 1, 2014 and filed suit within the required three years **See CM/ECF Doc. # 1, PAGEID # 1**. The Landmark Defendants have not – and *cannot* – produce evidence showing DB knew, or should be charged with knowledge of either the Landmark Defendants' or the Gehrlich Defendants' infringing activities outside of three years before filing. Therefore, DB is entitled to summary judgment on this defense.

### ii. The Landmark Defendants' Claims of Non-Infringement and Lack of Substantial Similarity are Not Affirmative Defenses

The Landmark Defendants allege as affirmative defenses that "Defendants' actions do not constitute infringement of Plaintiff's alleged copyright" and that "Defendants' alleged infringing plans do not amount to substantial copy and are not substantially similar to Plaintiff's alleged copyrights." See Doc. # 59, PAGEID 540. These defenses fail as a matter of law because they do not fit the legal definition of affirmative defenses.

"A defense which demonstrates that plaintiff has not met its burden of proof is not an affirmative defense." *Zivkovic v. Southern California Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002) (*citing Flav-O-Rich v. Rawson Food Service, Inc. (In re Rawson Food Service, Inc.)*, 846 F.2d 1343, 1349 (11th Cir. 1988); see also, 2A J. Moore and J. Lucas, Moore's Federal Practice PP 8.27[1], 8.27[1](2d ed. 1985 (An affirmative defense raises matters extraneous to the plaintiff's *prima facie* case).

As noted above, DB's *prima facie* case requires it to prove: "(1) ownership of a valid copyright, and (2) copying of the constituent elements of the work that are original." Feist, supra, 499 U.S. 340, 361 (1991).

Whether the Landmark Defendants' actions "constitute infringement" of DB's Copyrighted Works is literally the crux of this entire lawsuit.

Likewise, substantial similarity is essential in establishing the second element, and is an issue for the trier of fact, for which the jury is charged to visually compare the works and decide whether the "ordinary observer" would view the two works as aesthetically the same. *See Kohus v. Mariol*, 328 F.3d 848, 857 (6th Cir. 2003); *see also Design Basics, LLC v. Ashford Homes, LLC*, 2018 U.S. Dist. LEXIS 212442, at *46-47 (S.D. Ohio 2018) and *Design Basics, LLC v. Forrester Wehrle Homes, Inc., et. al*. 2018 U.S. Dist. LEXIS 50059, *31-32(N.D. Ohio, Mar. 27, 2018).

Because these defenses are not true affirmative defenses, they should likewise be dismissed.

    iii.    **"Innocent Infringement" is Not a Defense to Liability**

As a matter of law, innocent infringement of copyrighted works is not a defense to liability. See, e.g., *Interplan Architects, Inc. v. C.L. Thomas, Inc.*, No. 4:08-cv-03181, 2010 U.S. Dist. LEXIS 114306, at *143 (S.D. Tex. Oct. 27, 2010). "Even an innocent infringer is liable for infringement." See *Richard Anderson Photography v. Brown*, 1990 WL 538929, at *1 (W.D.Va. 1990). Therefore, despite their denial that they "acted in a willful, intentional, reckless manner," such will have no bearing on the Landmark Defendants' liability. As such, this allegation is likewise not a true "affirmative defense" and should be struck.

    iv.    **The Landmark Defendants Show No Evidence for Their Remaining Affirmative Defenses**

In addition to the defenses listed above, the Landmark Defendants have included several boilerplate affirmative defenses – failure to state a claim; failure to join all necessary parties; estoppel, laches, acquiescence and/or waiver; unclean hands; invalid copyright, and fair use. As to

these remaining affirmative defenses, the Landmark Defendants failed to produce any facts or other evidence to support any such defenses. The Landmark Defendants did not plead with any specificity, and no evidence has been offered by way of affidavit, deposition testimony, or other admissible evidence to prove these six affirmative defenses.

As to the Landmark Defendants' Fourth Affirmative Defense, generally, a waiver/estoppel defense in copyright actions applies when "the party to be estopped had knowledge of defendant's infringing conduct, and either intended his own conduct to be relied upon or acted so that the party asserting the estoppel had a right to believe it was so intended. Additionally, the defendant must be ignorant of the true facts and must rely on plaintiff's conduct to his detriment." *Lottie Joplin Thomas Trust v. Crown Publishers, Inc.*, 456 F. Supp. 531, 535 (S.D.N.Y. 1977). Essentially, to succeed in a defense of waiver/estoppel, the accused infringers must show that they substantially relied on the misleading conduct of the copyright owner in connection with taking some action.

For the remaining affirmative defenses, the Landmark Defendants have completely failed to produce any facts or other evidence to support any such pleadings. As stated above, its written discovery requests, DB asked the Landmark Defendants to produce all documents relating to, concerning, evidencing, and/or supporting "each and every affirmative defense raised by you in any answer to Plaintiff's Original and/or Amended Complaint." (**See CM/ECF Doc. # 64-2, PAGEID # 786, Exhibit 9 (Defendants' Response to Request for Production No. 24)**.In response to such request, the Landmark Defendants simply referred DB to all of the plan drawings they produced in discovery. **Id.** However, the Landmark Defendants completely failed to state which documents were related to, concerned, evidenced, and/or supported any of their affirmative defenses.

To pass the summary judgment stage, the Landmark Defendants must offer some evidence proving each element of their affirmative defenses or at least showing that some genuine issue of material fact exists. They have not – and indeed they are unable to do so. As to each of these defenses for which the Landmark Defendants failed to bring forth credible evidence, summary judgment should be granted in favor of DB and these affirmative defenses should be stricken.

## CONCLUSION

DB has conclusively established that – as a matter of law – it has ownership of valid copyrights in all of the Copyrighted Works, based on the presumption established by 17 U.S.C. §410(c) and evidence presented in this motion.

Additionally, the Landmark Defendants failed to carry their burden of proof to establish a valid defense on the affirmative defenses listed above. DB is therefore entitled to partial summary judgment on these affirmative defenses.

WHEREFORE, PREMISES CONSIDERED, DB prays that this Court GRANT their Motion for Partial Summary judgment as set forth above, and for such and other relief as they may be entitled.

Dated:       March 1, 2019                **LEJUNE LAW FIRM**

/s/ **Dana A. LeJune**_____
Dana A. LeJune  (TX 12188250)
Email: dlejune@triallawyers.net
6525 Washington Avenue
Suite 300
Houston, Texas 77007
Telephone:  713.942.9898
Facsimile: 713.942.9899

**SEMRO HENRY & BARGA LTD.**

/s/ **James L. Rogers**_____

16

        James L. Rogers   (0039743)
        Email:  rogers@shslawltd.com
        7255 Crossleigh Court
        Suite 104
        Toledo, Ohio 43617
        Telephone: 419.517.7377
        Facsimile: 419.517.7378

        Attorneys for Design Basics, LLC

## CERTIFICATE OF SERVICE

    A copy of the foregoing Plaintiff's Memorandum in Support of their Motion for Partial Summary Judgment was filed electronically and served on March 1, 2019 to all registered parties by operation of the Court's electronic filing system.

        /s/ ***Dana A. LeJune***
        Dana A. LeJune