UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| DESIGN BASICS, LLC | : | Case No.: 1:17-cv-00449-SJD |
| Plaintiff, | : | Judge Susan J. Dlott |
| vs. | : | **MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS** |
| LANDMARK COMMUNITIES, INC., et al. | : | **LANDMARK COMMUNITIES, INC., BERKEY HOMES, LLC,** |
| | : | **KELLY HOMES, INC., PR** |
| Defendants. | : | **PROPERTIES, INC., ORCHARD** |
| | : | **MEADOWS, LLC, PAUL A.** |
| | : | **BERDING, MATTHEW P.** |
| | : | **BERDING AND RONALD W.** |
| | : | **GEHRLICH** |

Now come Defendants, Landmark Communities, Inc., Berkey Homes, LLC, Kelly Homes, Inc., PR Properties, Inc., Orchard Meadows, LLC, Paul A. Berding, Matthew P. Berding and Ronald W. Gehrlich, by and through counsel, and hereby move this Court for an order granting summary judgment as to all of the Plaintiff's claims against the Defendants. This motion is supported by the attached memorandum, the pleadings filed in this case, and the affidavits of Richard Kraly and Paul Berding.

Respectfully submitted,

*/s/ Thomas J. Gruber* _____
Thomas J. Gruber   (0018697)
Michael P. Cussen   (0065078)
McCaslin, Imbus & McCaslin
600 Vine Street, Suite 800
Cincinnati, OH   45202
Phone:  513-421-4646
Fax:  513-421-7929
e-mail:   tjgruber@mimlaw.com
mpcussen@mimlaw.com
***Attorney for Defendants, Landmark Commuities, Inc., Berkey Homes, LLC, Kelly Homes, Inc., PR Properties, Inc., Orchard Meadows, LLC, Paul A. Berding, Matthew P. Berding, Ronald W. Gehrlich***

<u>**MEMORANDUM**</u>

## I.    PLAINTIFF'S CLAIMS

In this action, the Plaintiff has once again filed suit against several parties claiming violation of the U.S. Copyright Act, 17 U.S.C. §106, and the Digital Millenium Copyright Act, 17 U.S.C. §1202.  CM/ECF Doc.#58.  Design Basics asserts it owns a large number of architectural works including ones designated as the Paterson, Bermier, Ingram, Pawnee Point, Collier, Linden and Lancaster.  CM/ECF Doc. #58, p.344.  Design Basics claims defendants have violated its copyrights by marketing, constructing and selling home designs known as the Beech Creek, Muirfield, Sunnybrook, Windsor, Amberwood, Hutchinson, Applegate, and Bedford.   CM/ECF Doc.#58, p.346,347.

Similar to the allegations Design Basics has made in numerous other suits against small local homebuilders, Plaintiff alleges Defendants have violated its copyrights by scanning, copying or reproducing unauthorized copies of the plans set forth above.  CM/ECF Doc.#58.  Design Basics asserts the Defendants have marketed, constructed and sold homes in violation of the copyright protections afforded to its plans and removed its copyright management information in violation of 17 U.S.C. §1202. CM/ECF Doc.#58, p.353

## II.    DESIGN BASICS LITIGATION PRACTICES

Design Basics is a serial litigant.  The Public Access to Court Electronic Records demonstrates that Design Basics has filed over 122 similar cases.  119 of those cases have been filed since 2009 with 18 of the cases filed since this action was filed in June

of 2017. In addition to the cases already filed, Design Basics has many more claims it intends to bring to litigation.

A cursory review of many of the complaints filed by Design Basics throughout the country reveals the claims made in each case are the same. Plaintiff identifies a local homebuilder and any possibly related company. It reviews the homebuilder's designs then alleges the designs are substantially similar to one of its thousands of designs. Thus far, only one Court of Appeals has had the opportunity to review the claims of Design Basics in these lawsuits, the Seventh Circuit.

In *Design Basics, LLC., v. Lexington Homes, Inc.* 858 F. 3d. 1093, 1096 (7TH Cir. 2017) the Seventh Circuit found Design Basics had been in the business of producing market ready designs for modest single family homes for several decades. However, in 2009 the current owners purchased the company as an investment opportunity to pursue copyright infringement cases. *Lexington* at 1096. Proceeds from copyright infringement litigation have become a principal revenue stream for Design Basics. *Lexington* at 1097. The Seventh Circuit called Design Basics' practices "the art of the intellectual property shakedown." The Court likened Design Basics' current business model to trolling the internet for intellectual property treasures. *Lexington* at 1097.

The same practices that existed in the *Lexington* case existed in *Design Basics v. Forrester Wehrle Homes, Inc.*, 2017 WL 1485544 (N.D. 2017 Ohio). In *Forrester*, Judge Carr stated the flood of litigation by Design Basics was the product of the company's internal acknowledged bounty program wherein employees were paid a bounty for finding alleged infringements. *Forrester* *1. As this Court is aware from the

*Design Basics v. Ashford Homes* case, the same bounty program which the Court found distasteful in *Lexington* and *Forrester* is present in this case.

Paul Foresman, the Vice President and Director of Business Development for Design Basics, testified in the Ashford case that he has been involved in over 200 infringement cases.  Most of the cases have been filed since 2012.  In 2011/2012, Design Basics instituted a program wherein an employee who discovered a possible infringement of one of Design Basics' designs would receive a bonus.  Mr. Foresman has received over $55,000 in bonuses through this program.  In essence, Mr. Foresman became a bounty hunter with an admitted economic stake in finding infringing works. As the Seventh Circuit pointed out, this strategy is far removed from the goals of the Constitution's Intellectual Property Clause to promote the progress of science and useful arts.  *Lexington*, p. 1097.  It is unusual, to say the least, to have Circuit level authority condemning the business practices of the very plaintiff in the case at bar.

III.　**LEGAL ARGUMENT**

A.　**Summary Judgment Standard**

Summary judgment is appropriate if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(A). The movant has the burden to show that no genuine issues of material fact are in dispute.  *Provenzano v. LCI Holdings, Inc.,* 663 F.3d 806, 811 (6th Cir. 2011).  In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must present affirmative evidence in order to defeat a properly supported motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257 (1986).

Facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.  *Scott v. Harris,* 550 U.S. 372, 380 (2007). A genuine issue for trial exists where there is sufficient evidence on which the jury could reasonably find for the plaintiff.  *Anderson,* 477 U.S. at 252.  To demonstrate a genuine issue of fact, the opposing party must do more than simply show there is some metaphysical doubt as to the material facts and where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.  *Matsushita Electric Industry Company v. Zenith Radio Corporation,* 475 U.S. 574, 586-87 (1986).

### B.  PR Properties, Inc., Orchard Meadows, LLC

The Defendants are five separate legal entities and their owners.  Design Basics has identified over 250 homes which have been built by either Berkey Homes, LLC, Kelly Homes, Inc., or Landmark Communities, Inc. which it asserts infringe upon its designs.  CM/ECF Doc.#60, p.544.  Design Basics has not identified any homes which have been marketed, constructed or sold by either PR Properties, Inc. or Orchard Meadows, LLC which infringe upon their designs.  This is because neither PR Properties or Orchard Meadows markets, designs, constructs or sells homes.  CM/ECF Doc.#60, p.544.

PR Properties and Orchard Meadows are separate and distinct entities from Landmark Communities, Inc., Berkey Homes, LLC, or Kelly Homes, Inc.  CM/ECF Doc.#60, p.544.  These entities were created with the sole purpose of purchasing and developing tracts of land.  CM/ECF Doc.#60, p.544.  Neither Orchard Meadows, LLC or PR Properties, Inc. have ever marketed, sold or constructed a home.  CM/ECF

Doc.#60, p.544. To survive summary judgment as to PR Properties, Inc. and Orchard Meadows, LLC, Design Basics must show either these defendants violated its copyrights or they received profits from the sale of a home constructed and using one of the designs in question.

In discovery Design Basics was asked to put forth what evidence it had that PR Properties or Orchard Meadows ever advertised, constructed, sold, or received profit from the sale of a home using one of plaintiff's designs. CM/ECF Doc.#62, p.631-632. Design Basics provided no such evidence. Rather it responded by stating that defendants are advertising in an Orchard Meadows subdivision. Further, that Design Basics sends catalogs to local builder associations. CM/ECF Doc.#62, p.631-632. Presumably the defendants in the answer are the construction defendants since Orchard Meadows does not construct homes. Since neither Orchard Meadows or PR Properties belong to a builders association Design Basics cannot ward off summary judgment on the access prong for these defendants by claiming their designs may have been sent to such an association.

Neither of these development companies are members of the local or national home builder associations. CM/ECF Doc.#60, p.544. PR Properties and Orchard Meadows have never received any profits of Landmark Communities, Inc., Kelly Homes or Berkey Homes. CM/ECF Doc.#60, p.544. Rather, these entities simply developed tracts of land and sold lots within those tracts of land to various home builders. With no evidence PR Properties, Inc. and Orchard Meadows, LLC ever designed, constructed marketed or sold a home or received any profits from the sale of a home, there can be

6

no dispute they are entitled to summary judgment as to the plaintiff's claims regarding copyright violation as well as violations of the Digital Millennium Copyright Act.

### C. Copyright Violation as to Landmark Communities, Inc., Berkey Homes, LLC, Kelly Homes, Inc., Paul Berding, Matthew Berding and Ronald Gehrlich

As to the remaining defendants Design Basics asserts four claims for non-willful copyright infringement, and four claims for willful copyright infringement. CM/ECF Doc.#58, p.350. There is no dispute Berkey Homes, LLC, Kelly Homes, Inc. and Landmark Communities, Inc. are in the business of marketing, constructing and selling single family homes in the Butler County area. Nor is there any dispute the individuals listed as defendants are owners of these companies. However, the record is devoid of any evidence the defendants willfully or negligently violated Design Basics copyrights.

On December 1,1990 the Architectural Works Copyright Protection Act took effect and copyright protection was explicitly extended to architectural works. After the AWCPA both architectural designs and drawings, as well as the physical architectural work itself were protected. Prior to 1990 under the 1976 Copyright Act an architect had no exclusive right to build structures depicted in his or her technical drawings. *Oravec v. Sunny Isles Luxury Ventures, L.C.* 469 F. Supp 2d 118, 1162. (S.D. Fla. 2006). Prior to 1990 the PGS copyright protected the underlying design drawing from being copied but did not prevent the construction of a building based on the plans. *Oravec* at 1162. Individuals are not free to make unauthorized copies of copyrighted architectural plans, they are free to duplicate houses depicted in those plans. *Patriot Homes, Inc. v. Forest Housing, Inc.* 2006 WL 1752143 (N.D. Ind. 2006).

Design Basics admits its Paterson, Lancaster and Collier designs were all created prior to 1990. CM/ECF Doc.#62, p.628-629. The Paterson was created in 1988, the Lancaster in 1989. CM/ECF Doc.#62, p.628-629.

Attached to the amended complaint are a number of exhibits. These exhibits include the Certificates of Registration for each of the designs. The Certificate for the Paterson confirms it was created in 1988. CM/ECF Doc.#58, p.358. The certificate for the Bermier confirms it was created prior to 12-1-1990 as that is the date it was first published. CM/ECF Doc.#58, p.375. The certificate for the Ingram reveals was also created prior to 12-1-1990. CM/ECF Doc.#58, 397. The certificates for the Collier and the Lancaster confirm both were created prior to 12-1-1990. CM/ECF Doc.#58, p.430,465. Defendants deny copying any of the designs in this case and Design Basics has no evidence Defendants copied the designs. However, if the Court finds that a question of fact exists as to this issue because these designs were created prior to the AWCPA taking effect it does not apply to those designs.

To prevail on a claim for copyright infringement the holder must prove it is the owner of a valid copyright and the infringer copied a protectible element of the work. *Lexmark Int. v. Static Control Components Inc.*, 387 F. 3d 522, 534 (6th Cir. 2004). The first prong tests the originality and non-functionality of the work, both of which are presumptively established by the copyright registration. The second prong tests whether any copying occurred (a factual matter) and whether the portions of the work copied were entitled to copyright protection (a legal matter). *Feist* at 361.

Copying is an essential element of infringement. *Wickham v. Knoxville Int'l Energy Exposition,* 739 F. 2d 1094, 1097 (6th Cir. 1984). In the present case, Design

8

Basics has no evidence that anyone on behalf of or associated with the defendants actually copied any of the plaintiff's designs. Rather Design Basics simply asserts the designs are similar and therefore defendants must have copied them.

Paul Berding graduated from the University of Cincinnati with a degree in architecture.  CM/ECF Doc.#60, p.543.  Upon graduating Mr. Berding went to work for Joe Schwartz the owner of Universal Home Builders, a local home builder in the Cincinnati area.  CM/ECF Doc.#60, p.543.  Mr. Berding drafted plans for homes which Universal Home Builders was or would be constructing. CM/ECF Doc.#60, p.543   In 1978 Paul Berding, Joe Schwartz, and Ron Gehrlich, who also worked for Universal, formed Landmark Communities, Inc.  CM/ECF Doc.#60, p.543.   Landmark has been constructing single family homes since that time.  CM/ECF Doc.#60, p.543.

Landmark began constructing homes using Universal Home Builders' designs, with the permission of Mr. Schwartz.  CM/ECF Doc.#60, p.543.  Since Landmark's inception the number of its designs has increased and changed to keep up with the market trends.  CM/ECF Doc.#60, p.543.   However, all designs offered by Landmark are designed either from scratch or are simply modifications to the original Universal designs which have existed since the 1970s.  CM/ECF Doc.#60, p.543.

Kelly Homes, Inc. was formed by Paul Berding, Dennis Kelly and Ron Gehrlich in 1996.  CM/ECF Doc.#60, p.545.  Prior to forming Kelly Homes, Dennis Kelly was a real estate agent marketing homes including those built by Landmark Communities, Inc. CM/ECF Doc.#60, p.545.  Berkey Homes LLC was formed in 2005 and is owned by Matthew Berding and Kevin Keyes. CM/ECF Doc.#60, p.545.  After graduating college

both Matthew Berding and Kevin Keyes worked for Landmark Communities, Inc. prior to starting Berkey Homes. CM/ECF Doc.#60, p.545.

Neither Mr. Kelly, Mr. Keyes, or Matthew Berding had any involvement with the creations of the designs in question in this case. CM/ECF Doc.#60, p.545. Design Basics has no documentation or information that Kelly Homes or Berkey Homes ever purchased or received material from it. CM/ECF Doc.#60, p.545. When the companies were formed Landmark Communities, Inc. had already been marketing and constructing houses with the designs in question. CM/ECF Doc.#60, p.545. With Landmark's permission both Kelly Homes and Berkey Homes have used Landmark's designs to market, construct and sell homes. CM/ECF Doc.#60, p.545.

There is no evidence that either of these two entities willfully or negligently infringed on the plaintiff's copyrights. Neither of these parties were aware of the existence of Design Basics prior to this lawsuit. Neither participated in creating the designs in question. Rather, both companies were given permission by Landmark, who had been offering and constructing homes with these designs, to use the designs. Assuming the designs are infringements, there is no evidence Kelly Homes or Berkey Homes acted negligently or that they willfully violated Design Basics copyright.

As for Landmark Communities, Inc., again there is no evidence of direct copying of Design Basics plans. Where there is no direct evidence of copying, a plaintiff may establish an inference of copying by showing access to the allegedly infringed work by the defendant and a *substantial similarity* between protectible elements of the two works at issue. *Kohus v. Mariol,* 328 F. 3d 848, 853-854. Access is proven only when the plaintiff shows the defendant had an opportunity to view or to copy plaintiff's

work. *Glanzmann v. King,* 8 U.S.P.Q.2d 1594, 1595. Access may not be inferred through mere speculation or conjecture. *Ellis v. Diffie ,*177 F.3d 303, 506. A mere assertion of access, unsupported by probative evidence is inadequate. *Glanzmann,* at 1595. Nor is a bare possibility of access sufficient. A plaintiff must establish the defendant had a reasonable possibility to view plaintiff's work. *Glanzmann,* at 1595.

Design Basics has attached to the amended complaint its Order Detail Listing. This document, according to Design Basics, is a record of what a company purchased from Design Basics and when it was purchased. According to Plaintiff, The Order Detail Listing shows in August of 1990 Landmark Communities, Inc. ordered a Design Basics magazine. CM/ECF Doc.#60, p.545. Paul Berding denies ever ordering or receiving this magazine. CM/ECF Doc.#60, p.545. He denies he ever heard of Design Basics prior to this lawsuit. CM/ECF Doc.#60, p.545. Regardless of this, Design Basics cannot produce the magazine Landmark supposedly ordered in 1990. Without this magazine there is no evidence any of the designs in this litigation were contained in the magazine. However, even if Design Basics could produce the magazine, any design contained within the magazine would have been created before the AWCPA.

The evidence is undisputed Paul Berding never received, reviewed, ordered, or purchased any design books or plans from Design Basics. He did not know of the existence of Design Basics prior to this lawsuit. All of Landmark's designs are created in-house or are based off designs from the 1970s. As Design Basics can put forth no evidence Landmark accessed Design Basics plans, summary judgment in favor of Mr. Berding and Landmark Communities, Inc. is appropriate.

In addition to proving access a plaintiff must also prove the designs of the parties are substantially similar. The Sixth Circuit has adopted a two-part test to determine substantial similarity. The first step in determining substantial similarity requires identifying which aspects of the work, if any, are protectible by copyright, the second involves determining whether the allegedly infringing work is "substantially similar" to protectible elements of the artist's work. *Kohus at 855*. This test parses from the work the elements neither afforded copyright protection nor properly considered in the ordinary observer test.

The essence of the first step is to filter out the unoriginal, unprotectible elements that were not independently created by the inventor, and that possess no minimal degree of creativity. *Kohus* at 855. In cases involving a functional object rather than a creative work, it is necessary to eliminate those elements dictated by efficiency. *Kohus at* 856. It is also important to filter out those elements that follow naturally from the work's theme, rather than from the author's creativity, or elements that are "dictated by external factors such as particular business practices," *Kohus* at 856.

Once the unprotectible elements have been filtered out, the second step is to determine whether the allegedly infringing work is substantially similar to the protectible elements of the original. *Kohus* at 856. The second prong of the substantial similarity test should focus on the *intended audience. Kohus* at 857. This will ordinarily be the lay public, in which case the finder of fact's judgment should be from the perspective of the lay observer or the ordinary reasonable person. *Kohus* at 857. Substantial similarity is present only when the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude the defendant unlawfully appropriated the plaintiff's

protectible expression by taking material of substance and value. *Design Basics LLC., v. DeSahno Cos., Inc.* 2012 WL 4321313, *7 (E.D. Mich. 2012). The question is whether based upon a net impression of the works' expressive elements the ordinary lay observer would find them substantially similar to one another. *DeShano *7.*

Architectural works, as their own subject matter category under the Copyright Act, are unique." *Frank Betz Associates, Inc. v. Signature Homes, Inc.,2010 WL 137268, *3 (M.D. Tenn. 2010).* Functionally required design elements of each living unit are not protected. *Betz *4.* Architects are subject to zoning requirements, and a myriad of other restrictions in the manner in which they craft their "art." *Dorchen/Martin Assocs., Inc. v. Brook of Boyne City Inc.*, 2013 WL 5348627 at *6, (E.D. Mich. 2013). External considerations such as industry standards, consumer expectations, zoning requirements and the like can limit the amount of protected expression within architectural works. *Forrester Wehrle *4.* Given these limitations, an architect simply cannot avoid using common architectural features in designing a dwelling. *Dorchen *7.* Any design choice dictated solely by market demands cannot be an original. *Harvester, Inc. v. Rule Joy Trammell + Rubio, LLC.* 716 Supp. 2d. 428 (E.D. VA. 2010). *Harvester* 441.

Federal courts have held that architectural works most closely resemble "compilations" for purposes of the Copyright statute. *Intervest Construction Co. v. Canterbury Estate Homes, Inc.,* 554 F.3d 914, 920 (11th Cir. 2008). Compilations are works formed from "collect[ing] and assembling preexisting materials or of data . . . selected, coordinated, or arranged in such a way that the resulting work as whole constitutes an original work." Where a federal court addresses claims of similarity in

13

such compilations it must narrowly focus on the protectible creative elements.  *Intervest,* at 920.  Compilations are entitled to the least, narrowest or "thinnest" copyright protection, at the opposite end of the spectrum from say, a completely original work of fiction.  *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 586 (1994), *Intervest*, at 921. Where the protectible elements are thinner to begin with, dissimilarities loom larger for purposes of deciding whether, as a matter of law, any reasonable and properly instructed fact finder could find the disputed works "substantially similar."

All this means, as courts have held, that even admittedly very similar home designs do not of themselves prove substantial similarity as to protected elements. *Lexington,* at 1101.  See also *Design Basics, LLC v. Kerstiens Homes and Designs,* 341 F. Supp 3d 920, 927 (S.D. Ind. 2018) dismissing Design Basics' claims due to lack of substantial similarity of protectable elements).  As Lexington put it, while these homes may resemble each other, they doubtless resemble any number of other homes in a crowded field.  *Lexington* at 1104: *Kerstiens* at 928.

In the present case the designs at issue are standard traditional homes which share some similarities.  The same style and overall designs of these homes can be found throughout the country.  CM/ECF Doc.#60, p.546.  The homes are two story, three or four bedrooms with two and half baths and an attached garage.  These similarities can be expected however, it does not mean they are substantially similar.

Well-settled law holds that architecture contains scenes-a-faire—stock elements. The Second Circuit in *Zalewski v. Cicero Builder Dev., Inc.,* 754 F.3d 95, 105 (2d Cir. 2014) applied the scenes-a-faire doctrine in architecture stating: "Neoclassical government buildings, colonial houses, and modern high-rise office buildings are all

14

recognized styles from which architects draw. Elements from these styles should get no protection." Elements common to all "traditional" homes should get no protection. Zalewski at 105.

To sustain a copyright claim, one must survive a rigorous sifting out of non-protectible elements. "Likewise, there are certain market expectations for homes or commercial buildings. Design features used by all architects because of consumer demand also get no protection." Efficiency is an important concern. Any design elements attributable to building codes, topography, structures that already exist on the construction site, or engineering necessity should therefore get no protection. *Zalewski* at 105.

The designs in question were designed and marketed for the masses rather than an individual. The similarities are of items which are not subject to protection under the copyright laws. They are not features and characteristics original to Design Basics and exclusive to Design Basics designs. Rather, they are based upon industry standards, consumer expectations, zoning requirements and the like which must be filtered out before a comparison is made.

Richard Kraly is a registered architect in Ohio, Pennsylvania, and Nevada. CM/ECF Doc.#61, p.616. He is a graduate of the University of Cincinnati School of Architecture. CM/ECF Doc.#61, p.563. He has owned and operated Kraly Consulting Inc. since 1976. CM/ECF Doc.#61, p.563. Attached to his affidavit is the report he authored in this case. As set forth in his report, the arrangement of individual living spaces is based upon the relationship of usage of each space and interaction with the intended usage. CM/ECF Doc.#61, p.566-615. Dining areas are adjacent to kitchens,

15

bedrooms and bathrooms are clustered together, as are garages and utility rooms. CM/ECF Doc.#61, p.566-615.  Composition of a floor plan is determined by functional usage.  CM/ECF Doc.#61, p.566-615.  Once the non-protectible elements are removed from consideration, the designs are not similar. CM/ECF Doc.#61, 566-615.

Mr. Kraly's report goes through the same rigorous winnowing of non-protectible elements which federal courts have consistently held proper in architectural copyright claims.  In *Zalewskil* the Court compared what were admittedly fairly similar designs and concluded the dissimilarities of protectible expression are what carry the day:

> [Plaintiff] claimed the 'front porches are the same design, size and in the same location.' But a door centered on the front of the house is typical of many homes, and colonials in particular. Moreover, there are subtle differences in the paneling, size and framing of Plaintiff's and Defendant's doors.  These differences *are not great, but given the constraints of a colonial design, they are significant.* The same is true of the windows and garage doors that Plaintiff claims are identical. They are quite similar in location, size, and general design, but again, the similarities are due primarily to the shared colonial archetype. * * * Likewise the designs' shared footprint and general layout are in keeping with the colonial style. *There are only so many ways to arrange four bedrooms upstairs and a kitchen, dining room, living room, and study downstairs. * * * Although he undoubtedly spent many hours on his designs, and although there is certainly something of Plaintiff's own expression in his work, as long as Plaintiff adhered to a pre-existing style his original contribution was slight- his copyright very thin.*  Only very close copying would have taken whatever actually belonged to Plaintiff. Copying that is not so close would -- and in this case did – only capture the generalities of the style in which Plaintiff worked and elements common to all homes.

*Zalewski,* at 107.

Mr. Kraly separated the elements and compared what was left. He provided a useful side-by-side of key differences in the Design Basics and Landmark designs CM/ECF Doc.#61, p.566-615.  This same process was undertaken by Paul Berding, who has been building market homes for over forty years.  As set forth in his affidavit,

while the designs may look similar there are substantial differences in the designs. CM/ECF Doc.#61, p.564.  The differences include such things as the overall size of the house, the façade, the roof system, the interior roof design, the sizes of rooms, the set up of the kitchens, bathrooms, closets, windows, trim, how one enters the home, and much more.  CM/ECF Doc.#61, p.566-615.  All of these differences are significant to the design of the home when marketing them for the general public.  CM/ECF Doc.#61, p.566-615.  All of these items play a significant roll in the mind of a homebuyer when selecting whether to build a particular home.  CM/ECF Doc.#61, p.566-615.  As Lexington held, when comparing building plans, "even subtle differences can indicate there is no copyright infringement." *Id.* at 1105.  Here, as in *Lexington* and *Kerstiens*, many of the differences are more than trivial.

One cannot ignore well-settled copyright law principles and confer protection for scenes-a-faire common to all homes in this category, and protection for such concepts as "flexibility," connectivity, spaciousness and symmetry.  Nor can one protect what is dictated by building codes.  Courts have declined to extend protection to general concepts of flow and floorplans when as noted, there are only so many ways to arrange bedrooms, kitchens and bathrooms. When those elements are properly sifted out, superficial similarities fade, and the dissimilarities of protected expression are dispositive.

There is no substantial similarity of the compositional elements between the Design Basics designs and the designs of Landmark Communities, Inc.  As such, the copyright claims against Landmark, Berkey Homes, and Kelly Homes as well as the

claims against the individuals Paul Berding, Matthew Berding and Ronald Gerhlich should be dismissed, as a matter of law.

### D. Violations of 17 U.S.C. §1202

Design Basics asserts the Defendants, in marketing the designs at issue, intentionally removed and omitted their copyright management information and distributed material knowing the copyright management information had been removed or omitted. CM/ECF Doc.#58, p.353. However, Design Basics marshals no evidence to support this allegation only unfounded assertions.

A violation of § 1202(b)(1) requires proof the Defendant, (i) without authority, (ii) intentionally removed or altered copyright management information (iii) knowing or having reasonable grounds to know it would induce, enable, facilitate, or conceal an infringement. *See Gordon v. Nextel Communs. Mullen Advertising, Inc.,* 345 F.3d 922, 927 (6th Cir.2003). A plaintiff must prove the defendant possessed actual knowledge of the unauthorized change to the copyright management information, because the statute requires the defendant to act "knowing that copyright management information [had] been removed or altered without authority of the copyright owner or the law." *Id.*

There are two knowledge standards in § 1202(b)(3). The statute requires the defendant have knowledge the CMI was removed or altered without the permission of the copyright owner. Once the CMI is removed, a defendant then must have "reasonable grounds to know" his actions would "induce, enable, facilitate, or conceal an infringement of any right." 17 U.S.C. § 1202(b)(3). The plain language of the statute, as confirmed by the Sixth Circuit in *Gordon* makes clear that constructive knowledge is not enough, there must be actual knowledge. *Gordon v. Nextel,* 345 F.3d at 926.

18

Landmark's designs are created either from scratch in-house or are simply revisions of designs that have been used by Landmark since the 1970s.  Mr. Berding denies he intentionally removed or had any knowledge of anyone removing Design Basics' CMI.  As for Berkey Homes and Kelly Homes, none of the persons associated with these companies created the designs in question.  Rather, they simply used the designs Landmark had been using for years.

Whether or not this Court determines an infringement of the plaintiff's designs occurred, the issue of whether a DMCA violation occurred is a separate issue.  In order for the plaintiff to survive summary judgment on its DMCA claims it must put forth evidence of actual knowledge on the part of the defendants that Design Basics' CMI was removed.   As no such evidence exists Defendants are entitled to summary judgment on the Plaintiff's claims.

## IV.    CONCLUSION

The Defendants must be viewed individually as to the Plaintiff's allegations. There is no evidence PR Properties and Orchard Meadows ever marketed, constructed or sold a home using one of the plans at issue in this case.  Further, there is no evidence either received any of the profits from the construction of homes built by the defendant home builders in this case.  As such these entities are entitled to summary judgment.

Berkey Homes, LLC, Kelly Homes Inc. and Landmark Communities, Inc., as well as their principals, are also entitled to summary judgment on Plaintiff's copyright claims. Design Basics can produce no evidence its designs were copied by the Defendants. Design Basics also cannot produce evidence that Berkey Homes or Kelly Homes had

access to their designs. As to Landmark Communities, Inc., Design Basics can only show it ordered a magazine in August of 1990. There is no evidence as to what designs were contained in that magazine much less that any of the designs in question in this case were contained in that magazine. Even if Design Basics could meet the threshold of access, a proper review of the designs, focusing on protectible elements, and winnowing out non-protectible similarities, reveals the Design Basics plans and the Defendants' plans are not substantially similar. Therefore, all Defendants are entitled to summary judgment on the Plaintiff's copyright infringement claims.

As to the claims the Defendants violated17 U.S.C. §1202, there is no evidence of any actual knowledge of the removal of Design Basics CMI on the part of the Defendants and as such, the Defendants are entitled to summary judgment as to this claim.

Respectfully submitted,

*/s/ Thomas J. Gruber*
Thomas J. Gruber   (0018697)
Michael P. Cussen    (0065078)
McCaslin, Imbus & McCaslin
600 Vine Street, Suite 800
Cincinnati, OH   45202
Phone:  513-421-4646; Fax: 513-421-7929
e-mail:   tjgruber@mimlaw.com
mpcussen@mimlaw.com
***Attorney for Defendants, Landmark
Commuities, Inc., Berkey Homes, LLC,
Kelly Homes, Inc., PR Properties, Inc.,
Orchard Meadows, LLC, Paul A. Berding,
Matthew P. Berding, Ronald W. Gehrlich***

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document has been electronically filed with the U.S. District Court and served on all parties through the court's electronic filing system this 1st day of March, 2019.

*/s/ Thomas J. Gruber*

ID:TJG\170710 Landmark\MSJ