IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Design Basics, LLC, | : | Case No. 1:17-cv-449 |
| Plaintiff, | : | Judge Susan J. Dlott |
| v. | : | Order Denying as Moot Plaintiff's Motion for Summary Judgment and Granting Defendants' Motion for Summary Judgment |
| Landmark Communities, Inc., *et al.*, | : | |
| Defendants. | : | |

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment (Doc. 65) and the Landmark Defendants' Motion for Summary Judgment (Doc. 66). Plaintiff asserts that the Landmark Defendants copied and built homes using its copyrighted home designs. The Landmark Defendants deny copying Plaintiff's designs and deny that their home designs are substantially similar to Plaintiff's designs. For the reasons that follow the Court will **DENY AS MOOT** Plaintiff's Motion for Partial Summary Judgment and **GRANT** Defendants' Motion for Summary Judgment.

I.   BACKGROUND

A.   Procedural Posture

The procedural posture of this case is complicated and will be addressed briefly at the outset before setting forth the factual background in detail. On June 29, 2017, Plaintiff Design Basics, LLC ("Design Basics") initiated this suit against sixteen individuals and entities for copyright infringement of architectural home designs. (Doc. 1.)

A group of eight defendants collectively referred to herein as the "Landmark Defendants," filed Waivers of Service of Process on July 28, 2017 and have mounted a litigation defense against the claims against them. (Docs. 22–29.) The Landmark Defendants include

1

Landmark Communities, Inc.; Berkey Homes, LLC; Kelly Homes, Inc.; PR Properties, Inc.; Orchard Meadows, LLC; Paul A. Berding; Matthew P. Berding; and Ronald Gehrlich.

Service of process was executed upon a separate group of four defendants collectively referred to herein as "the Gehrlich Defendants" in September and October 2017. (Docs. 41–44.) The Gehrlich Defendants include Gehrlich Group, Inc.; Gehrlich Group, LLC; Gehrlich Properties, LLC; and Keith M. Gehrlich. However, the Gehrlich Defendants did not file responsive pleadings. Upon application by Design Basics, the Clerk of Court filed an Entry of Default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure against the Gehrlich Defendants on November 15, 2017. (Doc. 50.)

Service of process was returned unexecuted on September 29, 2017 against three more defendants: Gehrlich Builders, LLC; Gehrlich Homes, Inc.; and Jeffrey A. Gehrlich. (Docs. 38–40.) Finally, Defendant DL Gehrlich, LLC executed a Waiver of Service of Summons on August 16, 2017, (Doc. 36), but it did not file a responsive pleading, nor has it participated in this litigation. However, Design Basics has not sought an entry of default against the company.

After these initial proceedings, Landmark Defendants and Design Basics engaged in discovery. Design Basics filed an Amended Complaint against all sixteen Defendants on June 1, 2018 asserting nine claims for non-willful copyright infringement, willful copyright infringement, and violations of the Digital Millennium Copyright Act. (Doc. 58.) The eight Landmark Defendants filed a timely Answer asserting thirteen affirmative defenses. (Doc. 59.) Following discovery, Design Basics and the Landmark Defendants filed the pending cross-Motions for Summary Judgment on March 1, 2019. Design Basics seeks partial summary judgment only on the issues of whether it has ownership of valid copyrights in the seven architectural home designs and whether the Landmark Defendants can support ten of their

2

affirmative defenses. The Landmark Defendants seek summary judgment as a matter of law as to the claims against them.

**B.    Factual History**[1]

    **1.    Plaintiff Design Basics, LLC**

Design Basics formerly known as Design Basics, Inc. ("DB Inc."), has been in the business of creating, marketing, publishing, and licensing the use of architectural works since the early 1980's. Carmichael and Sherman restructured DB Inc. into Design Basics. Design Basics owns the assets and intellectual property of DB Inc.

For over three decades, Design Basics and its predecessor, DB Inc., marketed its original custom and ready-made home plans for single and multi-family homes through plan catalogs, home building industry publications, brokerage marketing partners, client-specific publications, and the internet. Every work within Design Basics' residential house plan portfolio is registered with the U.S. Copyright Office before being marketed in any way. Design Basics' customers license the home plans for marketing and construction purposes. Design Basics also customizes home plans for its builder customers and helps them market to potential home buyers. Design Basics has seen a decline in its annual plan licensing revenue over the past fifteen years. It has decreased its employee base by 75% as a result. Design Basics attributes the decline in its license sales to the rise of theft of its plans. Design Basics has filed more than 100 cases asserting copyright infringement of its plans.

Patrick Carmichael and Myles Sherman purchased DB Inc. in 2009 as an investment opportunity. Carmichael and Sherman invested in the company's infrastructure, installed a new database system, created new, ready-made house designs, increased marketing, continued to

---

[1] Except for where specific citations are provided, the factual history is derived from Plaintiff's Statement of Disputed Facts (Doc. 65-2), Defendants' Proposed Undisputed Facts (Doc. 67), and the Responses (Docs. 70, 76).

attend national home building expos, and started an internet blog. Design Basics continues to create and market new original home plans. It has authored approximately 350 new home plans since 2009.

### 2. The Landmark Defendants

In 1978, Defendant Paul Berding, Defendant Ronald Gehrlich, and non-party Joe Schwartz, formed Defendant Landmark Communities, a single-family home building company. Paul Berding and Ronald Gehrlich had previously worked for Joe Schwartz at Universal Home Builders. (P. Berding Aff., Doc. 60 at PageID 543.). Paul Berding, an architect, drafted plans for homes that Universal Home Builders was or would be constructing. After its founding, Landmark Communities constructed some homes using Universal Home Builders' designs with permission from Joe Schwartz.

Defendant Kelly Homes, Inc. was formed in 1996 by Paul Berding, Ronald Gehrlich, and non-party Dennis Kelly. Defendant Berkey Homes was formed in 2005 by Defendant Matthew Berding, Paul Berding's son and a former employee of Landmark Communities, and non-party Kevin Keyes, Paul Berding's son-in-law and a former employee of Landmark Communities. (LC Dep., Doc. 74-1 at PageID 1033.) Paul Berding gave both Kelly Homes and Berkey Homes permission to use Landmark Communities' designs to market, construct, and sell homes. The companies, therefore, share the same base home designs. Berkey Homes and Kelly Homes share office space with Landmark Communities, but all three companies keep separate books. (*Id.* at PageID 1032–1034.)

Paul Berding also formed Defendant PR Properties in 1989 and Defendant Orchard Meadows in 2005, both to purchase and develop tracts of land for residential home sites. Neither PR Properties nor Orchard Meadows belong to any builders' association nor have they marketed,

sold, or constructed a home. PR Properties and Orchard Meadows have not received profits from Landmark Communities, Kelly Homes, or Berkey Homes. (P. Berding Aff., Doc. 60 at PageID 544.)

### 3. Purported Copyright Infringement

Design Basics obtained the registration certificates from the U.S. Copyright Office for the seven home designs at issue in this case ("the Copyrighted Works"): the Paterson, Bermier, Ingram, Pawnee Point, Collier, Linden, and Lancaster designs. Patrick Carmichael, an owner and the chief operating officer of Design Basics, stated that on July 1, 2014 he found designs on the website, www.berkeyhomes.com, which infringed upon Design Basics' home designs. The Copyrighted Works and the corresponding Accused Works constructed, marketed, and sold by the Landmark Defendants can be found in the record as follows:

| Design Basics' Copyrighted Works | PageID # | Defendants' Accused Works | PageID # |
|---|---|---|---|
| Paterson | Doc. 63-1 at 646–660 | Beech Creek | Doc. 72-2 at 894, 903, 912 |
| Bermier | Doc. 63-2 at 661–680 | Muirfield | Doc. 72-2 at 897, 906, 915 |
| Ingram | Doc. 63-3 at 681–701 | Sunnybrook | Doc. 72-2 at 898, 907, 916 |
| Pawnee Point | Doc. 63-4 at 702–715 | Windsor, Windsor III, Windsor IV | Doc. 72-2 at 901–902, 910–911, 920 |
| Collier | Doc. 63-5 at 716–733 | Amberwood | Doc. 72-2 at 896, 905, 914 |
| Linden | Doc. 63-6 at 734–752 | Hutchinson/Applegate | Doc. 72-2 at 899–900, 908–909, 917–918 |
| Lancaster | Doc. 63-7 at 753–767 | Bedford | Doc. 72-2 at 895, 904, 913 |

Design Basics asserted that through investigation and discovery it determined that the Landmark Defendants constructed, marketed, and sold at least 274 three-dimensional copies (houses) of the

seven Copyrighted Works. (Carmichael Aff., Doc. 63 at PageID 644–645.)[2]

The Landmark Defendants deny that their home designs or the homes constructed using the designs infringe upon the Copyrighted Works. Paul Berding stated that he had not heard of Design Basics before this lawsuit. (LC Dep., Doc. 74-1 at PageID 1041.) He denied that Landmark Communities copied the Copyrighted Works, and he asserted generally that all of the home designs offered by Landmark Communities were either designed from scratch or were modifications to the original Universal Home Builders' designs. (P. Berding Aff., Doc. 60 at PageID 543.) More specifically, he stated that he created a design called the American Classic with eight different elevations in the early 1980s. (*Id.* at PageID 543–544.) He later used the American Classic to create designs entitled Hutchinson and Applegate.[3] However, Landmark Communities also retained co-op students to draft house designs. (LC Dep., Doc. 74-1 at PageID 1031–1032.) Paul Berding specifically stated on behalf of Landmark Communities that he did not know who designed several of the Accused Works including the Sunnybrook, the Windsor, the Amberwood, the Applegate, or the Bedford. (*Id.* at PageID 1032, 1036–1037.) He agreed that it likely was the co-op student drafters. (*Id.*) He admitted that he did not know what steps the co-op student drafters took to design new home plans such as the Accused Works. (*Id.* at PageID 1037.)

## II.     LEGAL STANDARDS FOR SUMMARY JUDGMENT MOTIONS

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden to

---
[2] Design Basics also asserted that the Gehrlich Group sold 114 three-dimensional copies of the Copyrighted Works. (*Id.*)

[3] Landmark Communities used the term Yorktown and Berkey Homes used the term Hutchinson for the same plan design. (Doc. 76 at PageID 1117.)

6

show that no genuine issues of material fact are in dispute.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 811 (6th Cir. 2011).  The movant may support a motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986).  In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

A court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Id.* at 249.  "[F]acts must be viewed in the light most favorable to the nonmoving party *only* if there is a 'genuine' dispute as to those facts."  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis added); *see also EEOC v. Ford Motor Co.*, 782 F.3d 753, 760 (6th Cir. 2015) (*en banc*) (quoting *Scott*).  A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252; *see also Shreve v. Franklin Cnty., Ohio*, 743 F.3d 126, 132 (6th Cir. 2014) ("A dispute is 'genuine' only if based on *evidence* upon which a reasonable jury could return a verdict in favor of the non-moving party.") (emphasis in original) (citation omitted).  Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).  Finally, "[w]here the parties have filed cross-motions for summary judgment, the court must consider each motion separately on its merits, since each party, as a movant for summary judgment, bears the burden to establish both the nonexistence of

genuine issues of material fact and that party's entitlement to judgment as a matter of law." *In re Morgeson,* 371 B.R. 798, 800–01 (B.A.P. 6th Cir. 2007).

## III. ANALYSIS

### A. Plaintiff's Copyright Claims

Design Basics asserts nine claims for copyright infringement in the Amended Complaint:

(1) non-willful infringement "by scanning, copying, and/or reproducing unauthorized copies thereof, in violation of 17 U.S.C. §106(1)[;]"

(2) non-willful infringement "publicly displaying, on their web site(s) and elsewhere, for purposes of advertising and marketing, unauthorized copies or derivatives thereof, in violation of 17 U.S.C. §106(5)[;]"

(3) non-willful infringement "by creating derivatives of Plaintiffs' works in the form of two dimensional plans and fully constructed residences, in violation of 17 U.S.C. §106(2)[;]"

(4) non-willful infringement "by advertising, marketing and/or selling one or more houses based upon copies or derivatives of said works, in violation of 17 U.S.C. §106(3)[;]"

(5) willful infringement "by scanning, copying, and/or reproducing unauthorized copies thereof, in violation of 17 U.S.C. §106(1)[;]"

(6) non-willful infringement "publicly displaying, on their web site(s) and elsewhere, for purposes of advertising and marketing, unauthorized copies or derivatives thereof, in violation of 17 U.S.C. §106(5)[;]"

(7) non-willful infringement "by creating derivatives of Plaintiffs' works in the form of two dimensional plans and fully constructed residences, in violation of 17 U.S.C. §106(2)[;]"

(8) non-willful infringement "by advertising, marketing and/or selling one or more houses based upon copies or derivatives of said works, in violation of 17 U.S.C. §106(3)[;]" and

(9) violation of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202, by removing Plaintiffs' copyright management information ("CMI") and distributing copies or derivative works knowing such CMI had been removed without authorization.

(Doc. 58 at PageID 350–353.)

**B.      Overview of Copyright Law**

The Copyright Act provides protection to copyright owners as follows:

Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:

(1) to reproduce the copyrighted work in copies or phonorecords;

(2) to prepare derivative works based upon the copyrighted work;

(3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;

\* \* \* \*

(5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly. . . .

17 U.S.C. § 106.

To establish copyright infringement, a plaintiff must prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *ATC Distrib. Group, Inc. v. Whatever It Takes Transmission & Parts, Inc.*, 402 F.3d 700, 705 (6th Cir. 2005) (quoting *Feist Publ'ns.*). "Copyright protection subsists . . . in original works of authorship."  17 U.S.C. § 102(a).

Prior to 1990, copyright protection for architectural designs was provided only by the section protecting technical drawings under the statutory category of "pictorial, graphic and sculptural works" or "PGS."  17 U.S.C. § 102(a)(5) (1989).  PGS was defined to include "diagrams, models, and technical drawings, including architectural plans."  17 U.S.C. § 101 (1989).  As of December 1, 1990, following the passage of the Architectural Works Copyright Protection Act ("AWCPA"), copyright protection was extended explicitly to "architectural works."  17 U.S.C. § 102(a)(8).  An architectural work is defined as follows:

> [T]he design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings. The work includes the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features.

17 U.S.C. § 101. Copyright protection still extends to PGS after the AWCPA was enacted. 17 U.S.C. § 102(a)(5).

Therefore, prior to the AWCPA, architectural designs and drawings were protected, but the physical design of the architectural work was not protected. A builder could construct a house identical to a copyrighted design without infringing the copyright protecting PGS, but the builder would violate the PGS protection if it copied the design, or if it copied the design and then used that copied design to construct a house. *See Scholz Design, Inc. v. Sard Custom Homes, LLC*, 691 F.3d 182, 189 (2d Cir. 2012); *Robert R. Jones Assocs., Inc. v. Nino Homes*, 858 F.2d 274, 280 (6th 1988). Since the AWCPA became effective, both the architectural designs and drawings, as well as the physical architectural work itself, are protected.

**C.     Analysis of the Copyright Infringement Claims**

Plaintiff Design Basics seeks summary judgment on the issue of whether it has ownership of valid copyrights in the Copyrighted Works and on ten of the Landmark Defendants' affirmative defenses. The Landmark Defendants, on the other hand, seek summary judgment on the substantive claims against them. They argue that the PR Properties and Orchard Meadows cannot be held liable for direct or vicarious infringement, that Design Basics has failed to prove as a matter of law that the Landmark Defendants had access to the Copyrighted Works, and that that Design Basics has failed to prove substantial similarity between protected elements of the Copyrighted Works and the Accused Works. Upon consideration of the evidence, the Court concludes that Design Basics cannot prove liability against PR Properties and Orchard Meadows as a matter of law, and it concludes that the infringement claims against the remaining Landmark

Defendants fail for lack of proof of access. Because the Court will grant summary judgment to the Landmark Defendants on these bases, the Court need not separately consider the arguments pertaining to Design Basics' Motion for Partial Summary Judgment. The Court will assume that Design Basics had ownership of valid copyrights in the Copyrighted Works for purposes of the following analysis.

### 1. Liability of PR Properties and Orchard Meadows

To begin, the Landmark Defendants move for summary judgment on the claims against PR Properties and Orchard Meadows on the grounds that they cannot be held liable for direct or vicarious infringement. Design Basics does not attempt to establish that PR Properties and Orchard Meadows can be held liable for direct infringement. Instead, its claims are based on the theory of contributory or vicarious infringement, and apparently by extension, a violation of the DMCA. The Sixth Circuit has explained the theory of vicarious liability for copyright infringement as follows:

> Liability for contributory infringement is based on the defendant's relationship to the direct infringement. *Ez–Tixz, Inc. v. Hit–Tix, Inc.,* 919 F.Supp. 728, 732–33 (S.D.N.Y. 1996). Contributory infringement occurs when one, "with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another." *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.,* 443 F.2d 1159, 1162 (2d Cir. 1971). A defendant can be held vicariously liable if he enjoys a direct financial benefit from the infringing activity and "has the right and ability to supervise" the infringing activity. *Ellison v. Robertson,* 357 F.3d 1072, 1076 (9th Cir. 2004) (internal quotation marks and citation omitted).

*Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 621 (6th Cir. 2004).

The sole evidence regarding PR Properties and Orchard Meadows comes from Paul Berding, the founder of each company. He asserted without contradiction that neither company has constructed, marketed, or constructed a house, that neither is a member of a builders' association, and that neither company has received profits from Landmark Communities, Kelly

11

Homes, or Berkey Homes. Instead, PR Properties and Orchard Meadows only have developed tracks of land and sold them to those builders. Design Basics suggests that Landmark Communities and Berkey Homes might have built houses using the Accused Works on tracts of land sold by PR Properties or Orchard Meadows, but it does not support that supposition with evidence. Orchard Meadows was not even founded until 2005, well after many of the purportedly infringing houses were sold. (Doc. 58-10 at PageID 515–523.) Moreover, Design Basics offers no evidence that PR Properties or Orchard Meadows had the right and ability to supervise the activities of the home builders. *See Bridgeport Music*, 376 F.3d at 621 (on the right and ability to supervise). Accordingly, the Court will grant summary judgment to PR Properties and Orchard Meadows on all claims against them.

2. **Liability of the Remaining Landmark Defendants**

The Landmark Defendants assert that they are entitled to summary judgment because as a matter of law Design Basics cannot establish that they had access to the Copyrighted Works. Proof of access to the Copyrighted Works is used to establish the second *Feist Publications* prong of a copyright infringement claim, the "copying of constituent elements of the work that are original," when there is no direct evidence of copying. 499 U.S. at 361. A plaintiff can establish that copying occurred "by showing that the defendant had access to the copyrighted work and that the copyrighted work and the allegedly copied work are substantially similar." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 534 (6th Cir. 2004); *see also Design Basics, LLC v. Ashford Homes, LLC*, No. 1:17-CV-273, 2018 WL 6620438, at *8 (S.D. Ohio Dec. 18, 2018) (quoting same). "[I]n in some cases the relationship between the degree of proof required for similarity and access may be inversely proportional: where the

similarity between the two works is strong, less compelling proof of access may suffice, and vice-versa." *Stromback v. New Line Cinema*, 384 F.3d 283, 293 (6th Cir. 2004).

"Access is essentially [viewing] or having a reasonable opportunity to [view] the plaintiff['s] work and thus having the opportunity to copy." *Murray Hill Publ'ns, Inc. v. Twentieth Century Fox Film Corp.*, 361 F.3d 312, 316 (6th Cir. 2004) (internal quotation and citation omitted); *see also Frank Betz Assocs., Inc. v. J.O. Clark Const., L.L.C.*, No. 3:08-CV-00159, 2010 WL 2253541, at *13 (M.D. Tenn. May 30, 2010) (same). Proof of access requires more than "mere speculation or conjecture." *Murray Hill Publ'ns*, 361 F.3d at 316. The plaintiff must provide probative evidence that the defendant had a "reasonable possibility" to view plaintiff's work. *Id.* (citation omitted). The access element "is intended to be easily established in light of the inherent difficulty of proving actual copying." *Frank Betz Assocs.*, 2010 WL 2253541, at *14.

Design Basics offers four primary sets of evidence to try to create at least a question of fact that Landmark Communities and Paul Berding had access to the Copyrighted Works. It then argues that the other Landmark Defendants should be found to have had access to the Copyrighted Works because they were interrelated with Landmark Communities and Paul Berding.

First, Design Basics submitted into evidence a shipping invoice indicating that Paul Berding on behalf of Landmark Communities ordered and received five building magazines (aka, plan catalogs) from Design Basics in August 1990. (Doc. 58-11 at PageID 524–525.) Paul Berding denied ordering the plan catalogs, but he admitted that one of his student co-op drafters could have used his credit card to order the plan catalogs. (P. Berding Aff., Doc. 60 at PageID 545; Doc. 74-1 at PageID 1037, 1040.) He also admitted that he did not know the process that

13

his co-op drafters used to create home designs. (Doc. 74-1 at 1036–1037, 1039.) However, he testified that he never saw a plan book on a drafter's desk, nor did he see a drafter looking at other plans. (*Id.* at 1041.)[4]

The shipping invoice is evidence that Landmark Communities received five plan catalogs from Design Basics in August 1990, but it is not sufficient to establish that the plan catalogs featured the Copyrighted Works. Design Basics' Bermier, Ingram, and Collier Copyrighted Works were not published until December 1990, the Linden was not published until 1992, and the Pawnee Point was not published until 1995. (Doc. 63-2 at PageID 661; Doc. 63-3 at PageID 683; Doc. 63-4 at PageID 702; Doc. 63-5 at PageID 716; Doc. 63-6 at PageID 734.) Therefore, those Copyrighted Works could not have been featured in the catalogs delivered in August 1990. Only the Paterson and the Lancaster Copyrighted Works had been published in August 1990.

Carl Cuozzo, the senior designer for Design Basics, asserted in his sworn Declaration that the Paterson was featured in the *American Lifestyle Collection Vol. 3* and the Lancaster in the *American Lifestyle Collection Vol. 5*. (Doc. 72 at PageID 864.) He attached photocopies of the relevant pages from those publications to support that assertion. (Doc. 72-1 at PageID 867–871.) However, Cuozzo then pointed to the shipping invoice as evidence that Design Basics delivered *American Lifestyle Collection Vols. 3* and *5* to Landmark Communities in August 1990, but the invoice does not support his assertion. (Doc. 72 at PageID 864 (citing Doc. 58-11 at PageID 525).) That is, the shipping invoice does not name the publications that Design Basics mailed to

---

[4] Of note, bare corporate receipt of design plans is not always sufficient to establish access. *See Design Basics, LLC v. Forrester Wehrle Homes, Inc.*, No. 3:15cv666, 2018 WL 1583103, at *18 (N.D. Ohio Mar. 30, 2018). Paul Berding testified that the company did not "receive a lot of plan catalogs . . . over the years[,]" that there were no plan catalogs in the Landmark Communities office, and that "[a]ll magazines just go to recycling." (LC Dep., Doc. 74-1 at PageID 1037, 1040.) Paul Berding also testified that he had not heard of Design Basics before this lawsuit. (*Id.* at PageID 1041.) His testimony is not rebutted. In fact, his testimony is partially supported by Gregory Neal, the former student co-op drafter for Landmark Communities from 1986 to 1988, who then worked as an employee until 1998. (Doc. 75-1 at PageID 1063–1070.) Neal testified that to his knowledge Landmark Communities did not use plan catalogs from other designers. (*Id.* at PageID 1065.) He also stated that did not recall seeing plan catalogs in the office. (*Id.* at PageID 1082.)

14

Landmark Communities in August 1990. Rather, the first page of the invoice states that one order was shipped, but in in the category of "Shipping Details" the invoice states only "DISPLAY ADS: BLDR MAG." (Doc. 58-11 at PageID 524.) The second page indicates that an order for five separate items was pending in July 1990, but the items are unnamed. (*Id.* at PageID 525.) Finally, the third through seventh pages of the invoice contain only "#error" codes. (*Id.* at PageID 526–530.) Cuozzo simply did not establish the factual basis for his assertion that the publications shipped to Landmark Communities contained the Paterson and Lancaster Copyrighted Works.[5]

Second, Design Basics attempts to prove access to the other five Copyrighted Works based on its direct mail program to members of the National Association of Home Builders ("NAHB"). Evidence that a copyrighted work was widely distributed can be sufficient in proper circumstances to prove access. *See King Records v. Bennett*, 438 F. Supp. 2d 812, 846 (M.D. Tenn. 2006). Cuozzo stated that Design Basics distributed more than four million plan catalogs through direct mailings to NAHB members over an unspecified period of time, including 58,794 plan catalogs to NAHB members in Ohio. (Doc. 72 at PageID 863.) Cuozzo also stated that Landmark Communities was a member of the NAHB and that it would have "received such plan publications regularly." (*Id.* at PageID 864.) He stated that each of the Copyrighted Works was featured in at least one specific plan catalog distributed between 1991 and 1996. (*Id.* at PageID 864–865.) Significantly, however, Cuozzo did not state that Landmark Communities received the plan catalogs featuring the Copyrighted Works as part of its NAHB direct mailing program.

---

[5] The lack of detail in the shipping invoice to Landmark Communities stands in contrast to other Design Basics shipping invoices. A second shipping invoice in the record in this case contains the name of every publication that Design Basics mailed to Keith Gehrlich and the Gehrlich Group. (Doc. 58-11 at PageID 531–535.) Similarly, the shipping invoice to a company called the Todd Development Company, Inc. submitted into evidence in a separate copyright infringement case filed by Design Basics also contained the names of the publications Design Basics sent to that builder. *Design Basics, LLC v. Ashford Homes, LLC*, No. 1:17-cv-273, CM/ECF Doc. 59-10 (S.D. Ohio June 18, 2018).

Instead, he stated that Landmark Communities received the plan catalogs as part of the Design Basics' "HBAGC plan publication distribution program." (*Id.*)

Cuozzo's statements are insufficient to establish access. To begin, Design Basics has not established that Landmark Communities was a member of the NAHB. The Court cannot rely on Cuozzo's bald statement that Landmark Communities was an NAHB member without any factual foundation for why Cuozzo would have personal knowledge about the purported fact. *See Giles v. Univ. of Toledo*, 241 F.R.D. 466, 469–70 (N.D. Ohio 2007) (stating that affidavits must be based on personal knowledge and inferences must be supported by specific facts). Next, Cuozzo does not explain whether or how the NAHB direct mailing program is related to the unexplained HBAGC distribution program. Cuozzo's reference to the HBAGC likely is a reference to the Home Builders Association of Greater Cincinnati. Landmark Communities was at all relevant times a member of the Home Builders Association of Greater Cincinnati. (LC Dep., Doc. 74-1 at PageID 1030–1031.) However, Cuozzo does not explain the extent of Design Basics' distribution program to HBAGC members or when it was in existence. The Court only can speculate whether Cuozzo intended to refer to two separate mailing/distribution programs, or whether he mistakenly conflated the NAHB with the HBAGC, when he stated that Landmark Communities received the specific plan catalogs featuring the Copyrighted Works as part of Design Basics' HBAGC distribution program. Finally, Cuozzo's statement that Design Basics sent plan publications to Landmark Communities "regularly" because it was an NAHB member is not the equivalent of a statement that it sent Landmark Communities every Design Basics plan catalog.

Finally, Cuozzo did not provide any business records to support his assertion that Landmark Communities received specific plan catalogs containing specific Copyrighted Works

16

on specific dates. (Doc. 72 at PageID 864–865.) For instance, he stated that as a part of the HBAGC distribution program, Landmark Communities received Design Basics' *Premier Home Plan, Spring 1992* catalog containing the Bermier design on or about January 1, 1992. (*Id.* at PageID 865.) Cuozzo supported the assertion that the Bermier design was featured in the *Premier Home Plans, Spring 1992* catalog by submitting the relevant pages of the catalog into evidence. (Doc. 72-1 at PageID 886.) However, he provided no business records indicating when or to whom Design Basics distributed the catalog. He did not provide a mailing list of NAHB (or HBAGC) members to which this particular publication was sent, or to which any publications were sent. In the end, a reasonable factfinder must make too many unsupported inferential leaps to conclude that Landmark Communities, an HBAGC member, received specific publications featuring the Copyrighted Works simply based on the limited evidence that Design Basics sent plan publications to NAHB members in Ohio.

Third, Design Basics also tries to establish that the Landmark Defendants had access to the Copyrighted Work by showing that the Gehrlich Defendants had access to the Copyrighted Works. Cuozzo provided a shipping invoice showing that Keith Gehrlich and Gehrlich Group ordered and received specific, named plan catalogs featuring all of the Copyrighted Works in March 1999. (Doc. 58-11 at PageID at 531–535; Cuozzo Dec., Doc. 72 at PageID 863–865.) Keith Gehrlich was the brother of Ron Gehrlich, one of the founders of Landmark Communities. Gregory Neal, the former Landmark Communities drafter and employee, testified that Landmark Communities, Kelly Homes, Keith Gehrlich, and the Gehrlich Defendants all shared the Landmark Communities' home designs. (Neal Dep., Doc. 75-1 at PageID 1093–1096.) However, Neal testified that those shared designs did not include design plans from other companies found in plan catalogs or on the internet. (*Id.* at PageID 1084–1085, 1096.)

17

This limited evidence does not establish that Keith Gehrlich's access or the Gehrlich Group's access to the Copyrighted Works should be imputed to the Landmark Defendants. Keith Gehrlich was never an employee of Landmark Communities, Kelly Homes, or Berkey Homes. The Landmark Defendants never built homes with the Gerhlich Defendants. There is no evidence that the Landmark Defendants borrowed designs from the Gerhlich Defendants. (LC Dep., Doc. 74-1 at PageID 1027–1028.) As such, there is no basis to conclude that any of the Landmark Defendants had a reasonable possibility to view the Copyrighted Works simply because they were mailed to Keith Gehrlich or Gehrlich Group.[6]

Fourth, Design Basics contends that the Landmark Defendants had access because their plan designs were widely accessible on the internet. However, they offer no evidence that any person associated with the Landmark Defendants viewed the plans on the internet. Moreover, Paul Berding testified on behalf of Landmark Communities that the company did not start using the internet until the mid-2000s, after the company started circulating the Windsor, Sunnybrook, Amberwood, Applegate, Bedford, Beech Creek, and Muirfield designs during the 1990s. (*Id.* at PageID 1037; Doc. 58-10 at PageID 517.)

The Sixth Circuit's suggestion that less compelling proof of access may suffice to prove copying when the evidence of similarity between a copyrighted work and an accused work is strong does not change the analysis. *See Stromback*, 384 F.3d at 293 (explaining that the relationship between the degree of proof needed to prove access and substantial similarity may be inversely proportional). The evidence that Design Basics has put forward is legally insufficient to prove the element of access, not merely less compelling. Design Basics' one

---

[6] Even if the access of Keith Gehrlich or the Gehrlich Group on or after March 1999 could be imputed to Paul Berding or Landmark Communities, that access could not support a claim of copying as to at least five of the Accused Works. Prior to March 1999, either the Gehrlich Homes or one of the Landmark Defendants already had constructed and sold homes purportedly based on the Bermier (Muirfield), Linden (Applegate), Lancaster (Bedford), Pawnee Point (Windsor), and Ingram (Sunnybrook) Copyrighted Works. (Doc. 58-10 at PageID 515–523.)

18

shipping invoice to Paul Berding and Landmark Communities does not specify what plan catalogs were shipped to those Defendants, and it pre-dates the creation of five of the seven Copyrighted Works. Its argument that access can be found based on its direct mailing program to NAHB members is not supported by specific facts demonstrating that Landmark Communities was an NAHB member, nor that Landmark Communities was on Design Basics' direct mailing list for any specific plan catalog featuring a Copyrighted Work. Finally, the direct mailing of plan catalogs to Keith Gehrlich or the Gehrlich Group cannot be imputed to the Landmark Defendants.

Design Basics' contention that Kelly Homes, Matthew Berding, Berkey Homes, and Ronald Gehrlich had access to the Copyrighted Works is based solely on their relationship with Paul Berding and Landmark Communities. The lack of evidence that Paul Berding and Landmark Communities had access to the Copyrighted Works is fatal to the copyright infringement claims against all of the Landmark Defendants. Additionally, the lack of evidence of access is fatal to the DMCA claims as well. "To succeed on a DMCA claim, however, a copyright holder still bears the burden of proving two of the elements essential to a traditional copyright infringement claim: (1) that it owns the copyright; and (2) that the defendant had access to it." *Design Basics, LLC v. Forrester Wehrle Homes, Inc.*, No. 3:15CV00666, 2018 WL 1583103, at *2 (N.D. Ohio Mar. 30, 2018) (citing 17 U.S.C. § 1202(b)(1)). Accordingly, the Landmark Communities are entitled to summary judgment on all of the claims against them.

**IV.    CONCLUSION**

For the foregoing reasons, the Landmark Defendants' Motion for Summary Judgment ((Doc. 66) is **GRANTED** and Plaintiff's Motion for Partial Summary Judgment (Doc. 65) is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

Dated this 4th day of June, 2019.

BY THE COURT:

S/Susan J. Dlott
Susan J. Dlott
United States District Judge