IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Design Basics, LLC, | : | Case No. 1:17-cv-449 |
| | : | |
| Plaintiff, | : | Judge Susan J. Dlott |
| | : | |
| v. | : | Order Granting Plaintiff's Motion for |
| | : | Relief of Court's Order and Granting in |
| Landmark Communities, Inc., *et al.*, | : | Part and Denying in Part Motions for |
| | : | Summary Judgment |
| Defendants. | : | |

This matter is before the Court on Plaintiff's Motion for Relief of Court's [Summary Judgment] Order (Doc. 89). In the Summary Judgment Order (Doc. 85) dated June 4, 2019, the Court held that Plaintiff Design Basics, LLC had not offered sufficient evidence to establish that the Landmark Defendants had access to any of its seven copyrighted home designs ("the Copyrighted Works"), a necessary element for its copyright infringement claims. Accordingly, the Court granted summary judgment to the Landmark Defendants and denied as moot summary judgment to Design Basics. (*Id.*) Design Basics now submits additional evidence—an updated shipping invoice that was utilized in discovery, but inadvertently not filed with the summary judgment briefs—and seeks relief from the Summary Judgment Order as to only the Paterson and Lancaster Copyrighted Works.[1]

For the reasons that follow, the Court **GRANTS** Design Basics relief from the Summary Judgment Order. The Court will admit the updated shipping invoice into evidence. Then the Court will reconsider Design Basics's Motion for Partial Summary Judgment (Doc. 65) and the Landmark Defendants' Motion for Summary Judgment (Doc. 66). Ultimately, the Court

---

[1] Design Basics explicitly stated that it is not asking the Court to reconsider the June 4, 2019 Order to the extent that the Court granted summary judgment to the Landmark Defendants on the other five Copyrighted Works. (Doc. 89 at PageID 1266, 1272 n.4.)

concludes that Design Basics is entitled to summary judgment on the issue of ownership of valid copyrights in the Paterson and Lancaster designs and on several affirmative defenses asserted by the Landmark Defendants.[2]  The Landmark Defendants retain summary judgment on Design Basics's claims based on the five Copyrighted Works no longer at issue, but they are not entitled to summary judgment as to Design Basics's claims based on the Paterson and Lancaster Copyrighted Works.

## I.    BACKGROUND

The Court set out the complete procedural history and factual background in the Summary Judgment Order and will not repeat it here.  It suffices to state that Design Basics has alleged that the Landmark Defendants copied and built houses using its copyrighted home designs.  Design Basics filed an Amended Complaint against the Landmark Defendants on June 1, 2018 asserting nine claims for non-willful copyright infringement, willful copyright infringement, and violations of the Digital Millennium Copyright Act ("DMCA"), and the Landmark Defendants timely filed an Answer asserting thirteen affirmative defenses. (Docs. 58, 59.)

Design Basics and the Landmark Defendants filed cross-Motions for Summary Judgment on March 1, 2019.  Design Basics sought partial summary judgment only on the issues:  (1) its ownership of valid copyrights in seven architectural home designs, (2) ten of the Landmark Defendants' purported affirmative defenses.  The Landmark Defendants sought judgment as a matter of law as to the claims against them.  As stated above, the Court held that Design Basics

---

[2]  The Court also concludes Defendants PR Properties and Orchard Meadows remain entitled to summary judgment on all claims against them.  Design Basics has not offered sufficient evidence for a reasonable jury to conclude that either company can be held liable for contributory or vicarious copyright infringement.  The Court affirms its grant of summary judgment to PR Properties and Orchard Meadows and need not address them further in this Order. Accordingly, the term Landmark Defendants in this Order refers to only Defendants Paul Berding, Landmark Communities, Ronald Gehrlich, Kelly Homes, Matthew Berding, and Berkey Homes.

did not offer sufficient evidence to support a finding that the Landmark Defendants had access to Design Basics's Copyrighted Works, a necessary element to their claims. Therefore, the Court concluded that the Landmark Defendants were entitled to summary judgment on all claims against them. The Court had no reason to analyze whether Design Basics was entitled to summary judgment on the ownership issue or on the Landmark Defendants' affirmative defenses, and accordingly, it denied as moot Design Basics's Motion for Partial Summary Judgment.

On July 2, 2019, Design Basics filed the pending Motion for Relief pursuant to Federal Rule of Civil Procedure 60(b). The matter is fully briefed and ripe for adjudication.

## II.     OVERVIEW OF COPYRIGHT LAW

The Copyright Act provides protection to copyright owners as follows:

> Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:
>
> (1) to reproduce the copyrighted work in copies or phonorecords;
>
> (2) to prepare derivative works based upon the copyrighted work;
>
> (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;
>
> * * * *
>
> (5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly....

17 U.S.C. § 106.

To establish copyright infringement, a plaintiff must prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991); *ATC Distrib. Group, Inc. v.*

*Whatever It Takes Transmission & Parts, Inc.*, 402 F.3d 700, 705 (6th Cir. 2005) (quoting *Feist*

*Publ'ns*). "Copyright protection subsists ... in original works of authorship . . . ." 17 U.S.C. §

102(a). A plaintiff can establish that copying occurred "by showing that the defendant had

access to the copyrighted work and that the copyrighted work and the allegedly copied work are

substantially similar." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 534

(6th Cir. 2004).

Prior to 1990, copyright protection for architectural designs was provided only by the

section protecting technical drawings under the statutory category of "pictorial, graphic and

sculptural works" or "PGS." 17 U.S.C. § 102(a)(5) (1989). PGS was defined to include

"diagrams, models, and technical drawings, including architectural plans." 17 U.S.C. § 101

(1989). As of December 1, 1990, following the enactment of the Architectural Works Copyright

Protection Act ("AWCPA"), copyright protection was extended explicitly to "architectural

works." 17 U.S.C. § 102(a)(8). An architectural work is defined as follows:

> [T]he design of a building as embodied in any tangible medium of expression,
> including a building, architectural plans, or drawings. The work includes the
> overall form as well as the arrangement and composition of spaces and elements
> in the design, but does not include individual standard features.

17 U.S.C. § 101. Copyright protection still extends to PGS after the AWCPA was enacted. 17

U.S.C. § 102(a)(5).

Therefore, prior to the AWCPA, architectural designs and drawings were protected, but

the physical design of the architectural work was not protected. A builder could construct a

house identical to a copyrighted design without infringing the copyright protecting PGS, but the

builder would violate the PGS protection if it copied the design, or if it copied the design and

then used that copied design to construct a house. *See Scholz Design, Inc. v. Sard Custom*

*Homes, LLC*, 691 F.3d 182, 189 (2nd Cir. 2012); *Robert R. Jones Assocs., Inc. v. Nino Homes*,

858 F.2d 274, 280 (6th Cir. 1988). After the AWCPA became effective on December 1, 1990, both the architectural designs and drawings, as well as the physical architectural work itself, are protected.

## III.   MOTION FOR RELIEF FROM JUDGMENT

### A.   Federal Rule of Civil Procedure 60

Rule 60(b)(1) authorizes a district court to grant relief from a final judgment for "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60. Rule 60(b)(1) is "intended to provide relief to a party in only two instances: (1) when the party has made an excusable litigation mistake or an attorney in the litigation has acted without authority; or (2) when the judge has made a substantive mistake of law or fact in the final judgment or order." *Cacevic v. City of Hazel Park*, 226 F.3d 483, 490 (6th Cir. 2000) (citation omitted). It "does not allow a defeated litigant a second chance to convince the court to rule in his or her favor by presenting new explanations, legal theories, or proof." *Tyler v. Anderson*, 749 F.3d 499, 509 (6th Cir. 2014). "The grant of relief under Rule 60(b) is circumscribed by public policy favoring finality of judgments and termination of litigation." *Id.*

### B.   Legal Standard for Access

Although a district court does not resolve the substantive merits of an underlying claim on a Rule 60 motion, the Court will set forth the contours of the access issue to provide context. Design Basics alleges that the Landmark Defendants' Beech Creek house design infringes upon its Paterson design and that Defendants' Bedford house design infringes upon its Lancaster design. Design Basics must prove that the Landmark Defendants had access to the Paterson and Lancaster designs to prove copyright infringement. Proof of access to the Copyrighted Works is used to help establish the second *Feist Publications* prong of a copyright infringement claim, the

"copying of constituent elements of the work that are original," when there is no direct evidence

of copying. 499 U.S. at 361. The Landmark Defendants argued in the initial summary judgment

briefing that they were entitled to summary judgment in part because Design Basics did not offer

sufficient evidence to establish that they had access to any of the Copyrighted Works. The Court

agreed and granted summary judgment to the Landmark Defendants primarily upon this basis.

"Access is essentially [viewing] or having a reasonable opportunity to [view] the

plaintiff['s] work and thus having the opportunity to copy." *Murray Hill Publ'ns, Inc. v.

Twentieth Century Fox Film Corp.*, 361 F.3d 312, 316 (6th Cir. 2004) (internal quotation and

citation omitted); *see also Frank Betz Assocs., Inc. v. J.O. Clark Const., L.L.C.*, No. 3:08-CV-

00159, 2010 WL 2253541, at *13 (M.D. Tenn. May 30, 2010) (same). Proof of access requires

more than "mere speculation or conjecture." *Murray Hill Publ'ns*, 361 F.3d at 316 (citation

omitted). The plaintiff must provide probative evidence that the defendant had a "reasonable

possibility" to view plaintiff's work. *Id.* (citation omitted). However, the access element "is

intended to be easily established in light of the inherent difficulty of proving actual copying."

*Frank Betz Assocs.*, 2010 WL 2253541, at *14 (going so far as to state that "it nonetheless

appears fairly well established that all a plaintiff has to do to prove 'access' is to show that the

plaintiff distributes its marketing materials far and wide such that virtually everyone has access

to them").

## C.    Summary Judgment Order

In the Summary Judgment Order, the Court discussed the following evidence submitted

by the parties relevant to whether the Landmark Defendants had access to the Paterson and

Lancaster Copyrighted Works:

> Design Basics submitted into evidence a shipping invoice indicating that
> Paul Berding on behalf of Landmark Communities ordered and received five

building magazines (aka, plan catalogs) from Design Basics in August 1990. (Doc. 58-11 at PageID 524–525.) Paul Berding denied ordering the plan catalogs, but he admitted that one of his student co-op drafters could have used his credit card to order the plan catalogs. (P. Berding Aff., Doc. 60 at PageID 545; Doc. 74-1 at PageID 1037, 1040.) He also admitted that he did not know the process that his co-op drafters used to create home designs. (Doc. 74-1 at 1036–1037, 1039.) However, he testified that he never saw a plan book on a drafter's desk, nor did he see a drafter looking at other plans. (*Id.* at 1041.) [Footnote omitted.]

The shipping invoice is evidence that Landmark Communities received five plan catalogs from Design Basics in August 1990, but it is not sufficient to establish that the plan catalogs featured the Copyrighted Works. . . . Only the Paterson and the Lancaster Copyrighted Works had been published in August 1990.

Carl Cuozzo, the senior designer for Design Basics, asserted in his sworn Declaration that the Paterson was featured in the *American Lifestyle Collection Vol. 3* and the Lancaster in the *American Lifestyle Collection Vol. 5.* (Doc. 72 at PageID 864.) He attached photocopies of the relevant pages from those publications to support that assertion. (Doc. 72-1 at PageID 867–871.) However, Cuozzo then pointed to the shipping invoice as evidence that Design Basics delivered *American Lifestyle Collection Vols. 3* and *5* to Landmark Communities in August 1990, but the invoice does not support his assertion. (Doc. 72 at PageID 864 (citing Doc. 58-11 at PageID 525).) That is, the shipping invoice does not name the publications that Design Basics mailed to Landmark Communities in August 1990. Rather, the first page of the invoice states that one order was shipped, but in in the category of "Shipping Details" the invoice states only "DISPLAY ADS: BLDR MAG." (Doc. 58-11 at PageID 524.) The second page indicates that an order for five separate items was pending in July 1990, but the items are unnamed. (*Id.* at PageID 525.) Finally, the third through seventh pages of the invoice contain only "#error" codes. (*Id.* at PageID 526–530.) Cuozzo simply did not establish the factual basis for his assertion that the publications shipped to Landmark Communities contained the Paterson and Lancaster Copyrighted Works. [Footnote omitted.]

(Doc. 85 at PageID 1229–1231.)

## D.    Relief from Judgment

In the pending Motion for Relief, Design Basics purports to cure the deficiency in the record about the shipment of the plan catalogs to Paul Berding in August 1990. Greg Dodge, a vice president for Design Basics, states in a sworn declaration that the invoice submitted into the record at Doc. 58-11 at PageID 524–529 was from an early Design Basics's database nicknamed

"Grandson."  (Doc. 87 at PageID 1239–1240.)  He further stated that the Grandson database was intended for internal record keeping only, and that many reports generated by the database identified plan catalogs by volume number only, even though the name also was contained in the database.  (*Id.* at PageID 1240.)  Dodge stated that the Grandson database was still in use in mid-2014 when Design Basics first identified the purported copyright infringement and pulled the customer order history for Defendants Paul Berding and Landmark Communities.  (*Id.*)  That customer order history is the Grandson shipping invoice Design Basics filed at Doc. 58-11.

Design Basics started using a DBN database system in 2016, and it includes the name of the plan catalogs when a customer order history report is generated.  (Dodge Dec., Doc. 87 at PageID 1240.)  The DBN shipping invoice explicitly lists that Design Basics mailed to Paul Berding on behalf of Landmark Communities the plan catalogs entitled *American Lifestyle Collection Vols. I–V.*  (Doc. 87-1 at PageID 1244.)  Significantly, Design Basics asserts that in January 2018, Design Basics produced to the Landmark Defendants in discovery the DBN shipping invoice with the plan catalog names.  (Dodge Dec., Doc. 87 at PageID 1241; LeJune Dec., Doc. 88 at PageID 1254–1255.)  The DBN shipping invoice is bates-stamped as DB-Berkey 001418 through DB-Berkey 001422.  (Doc. 87-1 at PageID 1242–1246.)

Design Basics now seeks relief from judgment to admit into evidence the DBN shipping invoice with the plan catalog names and to re-adjudicate the summary judgment motions. Design Basics asserts that it was excusable neglect by its legal counsel for purposes of Rule 60(b)(1) to have filed the Grandson shipping invoice without the plan catalog names instead of the DBN shipping invoice with the plan catalog names.

The Landmark Defendants raise several objections to the consideration of the DBN shipping invoice.  First, the Landmark Defendants contend that consideration of this new

evidence is not appropriate on a Rule 60 motion.  *See Tyler*, 749 F.3d at 509 (stating that a Rule 60 motion is not intended to permit parties to submit new proof).  Second, the Landmark Defendants argued in their summary judgment briefs that Design Basics had not proven that the publications referenced in the Grandson shipping invoice contained the Copyrighted Works. (Doc. 66 at PageID 824; Doc. 80 at 1195.)  Design Basics did not produce or file the DBN shipping invoice in response to those arguments in its responsive briefs.  Third, the Landmark Defendants dispute that Design Basics produced in discovery the DBN shipping invoice. Michael Cussen, an attorney for the Landmark Defendants, provides a discovery email indicating that on January 5, 2018 Design Basics produced bates-stamped documents DB-Berkey 001224 through DB-Berkey 001417, but did not produce the shipping invoice beginning with bates-stamped document DB-Berkey 001418.  (Cussen Aff., Doc. 91 at 1281, 1285.)  Fourth, the Landmark Defendants object that they have not had the opportunity to take discovery regarding different versions of Design Basics's databases nor the reports generated thereby.

Despite these arguments, the Court concurs with Design Basics that it was excusable neglect for it to have failed to file the DBN shipping invoice to support the summary judgment briefs.  At some point, it appears that Design Basics's legal counsel failed to distinguish between the evidence it disclosed to the other party but did not file with the Court (the DBN shipping invoice), and the evidence that it filed with the Court (the Grandson shipping invoice).  This was neglectful, but it does not appear to have been done to mislead the Court or to cause delay. Moreover, for the reasons that follow, the Court does not believe the DBN shipping invoice constitutes new evidence for purposes of Rule 60(b).  Design Basics stated in its Objections and Answers to Defendants' First Interrogatories served on January 20, 2019 and in its Objections and Responses to Defendants' First Request for Production served on January 22, 2019 that it

had produced a set of documents including those bates-stamped as DB-Berkey 001418 through DB-Berkey 001422—the DBN shipping invoice—to the Landmark Defendants. (Doc. 93-1 at PageID 1299, 1310–1311; Doc. 93-2 at PageID 1313, 1326–1328.) The Landmark Defendants did not object that they had not received the documents listed. Also, Design Basics used the DBN shipping invoice as an exhibit in two depositions in February 2019, including the deposition of Paul Berding as the corporate representative of Landmark Communities. (Doc. 93 at PageID 1298; Doc. 93-3 at PageID 1333–1337.)

Design Basics's filing error has delayed the prosecution of their case to the detriment of both parties and the Court. However, the fact that Design Basics utilized the DBN shipping invoice during discovery before summary judgment briefing mitigates the prejudice caused to the Landmark Defendants by the delay. Both parties had seen the DBN shipping invoice and could have cleared up the confusion as to what publications Design Basics shipped to Paul Berding and Landmark Communities in August 1990. It is not unjust for the Court to consider the DBN shipping invoice as evidence relevant to the access issue. Cases should be decided on the merits when possible. The Court will grant Design Basics relief from judgment to admit the DBN shipping invoice into evidence and reconsider the summary judgment motions.[3]

## IV.    MOTIONS FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In this case of cross-motions for summary judgment, the Court "must consider each motion separately on its merits, since each

---

[3] The Landmark Defendants may move the Court to take limited discovery regarding the DBN database and the DBN shipping invoice before trial. However, the Court asks the parties first to confer in good faith as to what limited discovery would be reasonable. Leave of the Court is not needed if the parties can agree on the scope of discovery to be taken, if any.

party, as a movant for summary judgment, bears the burden to establish both the nonexistence of genuine issues of material fact and that party's entitlement to judgment as a matter of law." *In re Morgeson,* 371 B.R. 798, 800–01 (B.A.P. 6th Cir. 2007).

Design Basics alleges that the Landmark Defendants' Beech Creek design infringes upon its Paterson design and that the Landmark Defendants' Bedford design infringes upon its Lancaster design. (Doc. 58 at PageID 346, 347.) As stated above, Design Basics has sought partial summary judgment only as to whether it has ownership of valid copyrights in the Paterson and Lancaster designs and on ten of the Landmark Defendants' affirmative defenses, while the Landmark Defendants have sought judgment as to the claims against them. The Court will begin by examining the evidence supporting Design Basics's claims and then turn to the Landmark Defendants' affirmative defenses.

**A.      Access Issue Reconsidered**

Because it was the subject of the Motion for Relief, the Court will begin with the issue of whether Design Basics has offered sufficient proof that the Landmark Defendants had access to the Paterson and Lancaster designs to withstand summary judgment. The Court agrees with Design Basics that it has. As discussed above, the DBN shipping invoice indicates that Design Basics shipped *American Lifestyle Collection Vols. I–V* to Paul Berding and Landmark Communities in August 1990. (Doc. 87-1 at PageID 1242–1246.) Carl Cuozzo, the senior designer for Design Basics, averred and offered evidence that the *American Lifestyle Collection Vols. III* and *V* contained the Paterson and the Lancaster designs, respectively. (Doc. 72 at PageID 864; Doc. 72-1 at PageID 867–871.) Paul Berding may testify that he had not heard of Design Basics nor seen the plan catalogs, but a reasonable jury could conclude that his co-op drafters ordered the catalogs and viewed the Paterson and Lancaster designs before issuing the

Beech Creek and Bedford designs. (P. Berding Aff., Doc. 60 at PageID 545; LC Dep., Doc. 74-1 at PageID 1037, 1040.)

Design Basics's contention that Defendants Kelly Homes, Matthew Berding, Berkey Homes, and Ronald Gehrlich had access to the Copyrighted Works appears to be based solely on their relationship with Paul Berding and Landmark Communities. The parties have not provided the Court with arguments concerning whether these Defendants had access to the Paterson and Lancaster designs in particular, as opposed to having access to all seven Copyrighted Works generally. The facts identified by the parties are few.

Kelly Homes was formed in 1996 by Paul Berding, Ronald Gehrlich, and non-party Dennis Kelly. Berkey Homes was formed in 2005 by Matthew Berding, Paul Berding's son and a former employee of Landmark Communities, and non-party Kevin Keyes, Paul Berding's son-in-law and a former employee of Landmark Communities. (LC Dep., Doc. 74-1 at PageID 1032–1033.) Paul Berding gave both Kelly Homes and Berkey Homes permission to use Landmark's designs to market, construct, and sell homes. The companies, therefore, share the same home designs. In fact, the copy of the Beech Creek home design alleged to infringe upon the Paterson design is from a Berkey Homes advertisement. (Doc. 58-8 at PageID 480–481.) Berkey Homes and Kelly Homes share office space with Landmark Communities, but all three companies keep separate books. (*Id.* at PageID 1032–1034.) Matthew Berding and his partner bought Landmark Communities from Paul Berding in 2015 or 2016. (*Id.* at PageID 1033.) Though this evidence of access is substantially weaker than the evidence that Paul Berding and Landmark Communities had access to the Paterson and Lancaster Copyrighted Works, the Court concludes that it is sufficient to present the issue to a jury.

**B.       Ownership of Valid Copyrights**

Having concluded that the access element of copyright infringement is not a basis upon which to grant summary judgment to the Landmark Defendants, the Court now must consider the other elements of a copyright infringement case.  The first prong of the *Feist Publications* test for copyright infringement asks whether Design Basics owned valid copyrights in the Paterson and Lancaster designs.  499 U.S. at 361.  "The first prong tests the originality and non-functionality of the work, both of which are presumptively established by the copyright registration."  *Lexmark Int'l*, 387 F.3d at 534 (internal citation omitted); *see also* 17 U.S.C. § 410(c).[4]  That presumption applies here because Design Basics obtained Certificates of Registration for the Paterson design in 1988 and for the Lancaster design in 1989.  (Carmichael Dec., Doc. 63; Doc. 63-1; Doc. 63-7.)

The Landmark Defendants dispute that Design Basics owns valid copyrights in the designs.  The Landmark Defendants argue both that the Paterson and Lancaster designs lack sufficient originality and they are not protected by the AWCPA.  As to the originality argument, only those components of a copyrighted work that are original are entitled to copyright protection.  *Feist Publ'ns*, 499 U.S. at 348.  The Landmark Defendants rely in part on their expert, Richard P. Kraly, an architect with forty years of experience, who opined that "Design Basics's residential designs are composed of elements deemed unprotected by the AWCPA as are Defendant's."  (Kraly Report, Doc. 61-1 at PageID 580.)  He explained further that:

---

[4]  The statute states as follows:

> In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate.  The evidentiary weight to be accorded the certificate of registration made thereafter shall be within the discretion of the court.

17 U.S.C. § 410(c).

> [A]ll residences considered herein are composed of standard features / materials / assemblies in existence and available to designers / builders / homeowners for several decades but incorporate current technology that comply with industry standards, building codes, manufacturer recommendations and client expectations as well as satisfy desired efficiency of construction plus cost containment for builders.

(*Id.*)

Design Basics responds that Defendants have misstated or misapplied the standard for originality. Originality requires "only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Feist Publ'ns*, 499 U.S. at 345. Originality does not require "novelty[,]" and the required level of creativity is "extremely low." *Id.* "[A] work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying." *Id.* Regarding architectural works such as houses, the regulations provide that "[s]tandard configurations of spaces, and individual features, such as windows, doors, and other staple building components" are not protected. 37 C.F.R. § 202.11(d)(2). Courts have further explained that "the use of porches, porticos, dormers, and bay windows, for example, is not protected, but the particular expression of those ideas and their combination in one house, may be protected." *Design Basics, LLC v. Petros Homes, Inc.*, 240 F. Supp. 3d 712, 718 (N.D. Ohio 2017) (quoting *Frank Betz Assocs., Inc. v. J.O. Clark Constr., LLC*, No. 3:08-cv-159, 2010 WL 4628203, at *5 (M.D. Tenn. Nov. 5, 2010)).

The Court finds that the Landmark Defendants' argument misses the mark by conflating the two prongs of the *Feist Publications* test. Given that the Copyrighted Works are registered and presumptively original, the argument that there are no protectable elements in Design Basics's designs is better examined in the second *Feist Publications* prong. The Sixth Circuit has instructed that the second prong of the *Feist Publications* infringement test examines

"whether any copying occurred (a factual matter) *and whether the portions of the work copied were entitled to copyright protection (a legal matter).*" *Lexmark Int'l*, 387 F.3d at 534 (emphasis added). Applying *Lexmark International*, the *Petros Homes* court stated that the defendants' arguments that various elements of the home designs were not protected as original "because they were standard features or features dictated by building codes and other practical concerns" was relevant to the second prong of the *Feist Publications* test. 240 F. Supp. 3d at 719.

The *Petros Homes* court further held Design Basics owned valid copyrights in different home design plans because the plans "possess the requisite minimal degree of creativity." *Id.* The court stated that the minimal element of creativity could be satisfied by the way the author "assembl[ed] even standard elements of architectural design." *Id.* at PageID 718. A different court in the same district—though not addressing the ownership element directly—likewise concluded that "copyright law protects the arrangements of standard elements for which [Design Basics] seeks protection: the overall form or the look and feel of the homes, the arrangement and composition of spaces and elements across the first and second floors of the houses, and program of the architectural work—i.e., the nature and quantity of the rooms and elements." *Design Basics, LLC v. Forrester Wehrle Homes, Inc.*, 302 F. Supp. 3d 933, 945 (N.D. Ohio 2018) (internal quotations and citations omitted). The court also said that "independent selection and arrangement of component parts into an overall, original design does not require that an architect create something like Fallingwater or the Guggenheim." *Id.* at 944 (internal quotation and citation omitted). Finally, in a case cited by the Landmark Defendants, *Design Basics, LLC v. J&V Roberts Investment, Inc.*, 130 F. Supp. 3d 1266 (E.D. Wis. 2015), the court found that "the particular selection, arrangement, and combination of individual elements" in Design Basics's design plans contained "originality so as to warrant copyright protection." *Id.* at 1278. This

Court, likewise, concludes that Design Basics's Paterson and Lancaster designs possess the requisite degree of creativity to establish Design Basics's ownership of valid copyrights in them.

The Landmark Defendants also argue that Design Basics is not entitled to summary judgment on the ownership issue because the Paterson and Lancaster designs were created prior to the enactment of the AWCPA on December 1, 1990. As explained above, copyright law pre-AWCPA protected technical drawings under the statutory category of "pictorial, graphic and sculptural works" or PGS. 17 U.S.C. § 102(a)(5) (1989). The parties appear to agree that the Paterson and Lancaster designs are protected only as PGS. The Certificate of Copyright Registration for the Paterson shows that it was created and first published in 1988. (Doc. 63-1 at PageID 648.) Likewise, the Certificate of Copyright Registration for the Lancaster shows it was created and first published in 1989. (Doc. 63-7 at PageID 753.) There does not seem to be a dispute as to this matter. The Landmark Defendants have not explained why the fact that the Paterson and Lancaster designs are protected only as PGS is relevant to the ownership of valid copyright issues. Therefore, the Court will grant summary judgment to Design Basics insofar as it holds that Design Basics owns valid copyrights in the Paterson and the Lancaster designs.

## C.     Substantial Similarity

Substantial similarity is relevant to the second *Feist* Publications prong. In the absence of direct evidence, a plaintiff can prove copying by showing the defendant had access to the copyrighted work and by showing substantial similarity between the copyrighted work and the accused work. *Lexmark Int'l*, 387 F.3d at 534. Ordinarily, the Sixth Circuit evaluates the substantial similarity of all copyrighted works under a two-step framework: "the first step requires identifying which aspects of the artist's work, if any, are protectible by copyright; the second involves determining whether the allegedly infringing work is 'substantially similar' to

protectible elements of the artist's work." *Tiseo Architects, Inc. v. B & B Pools Serv. & Supply Co.*, 495 F.3d 344, 348 (6th Cir. 2007) (quoting *Kohus v. Mariol,* 328 F.3d 848, 855 (6th Cir. 2003)). Both parties and their experts analyzed substantial similarity primarily through the framework of the AWCPA, even though they agree that the pre-AWCPA law applies to the Paterson and Lancaster designs.

Design Basics argues that the house designs should be examined broadly as a whole design, not by separating out each standard component part. It asserts through its expert, Matthew McNicholas, that "[i]dentifying the differences of individual standard or functional elements such as doors, windows, and roofs is just as immaterial as identifying the similarities of those elements." (McNicholas Report, Doc. 73-1 at PageID 944.) Instead, he suggests to "evaluate how all spaces connect and interact with one another and simultaneously with the rest of the floor plan, across all levels." (*Id.* at PageID 945.)

On the other hand, the Landmark Defendants offer the opinion testimony of Kraly. As stated earlier, Kraly asserts that Design Basics's Paterson and Lancaster home designs and the Landmark Defendants' home designs are composed of non-protected elements that comply with industry standards, customer expectations, and building codes. (Kraly Report, Doc. 61-1 at PageID 580.) Consistent with this belief, he identifies several pages of specific features for both the Paterson and the Lancaster designs that should not be entitled to copyright protection. (*Id.* at PageID 585–588; 604–606.) His list of non-protected elements in the Lancaster design include the following limited examples:

- standard individual components (cabinets, showers, light fixtures);
- standard design elements (*e.g.*, kitchen, hallway closet);
- functional exterior elements (*e.g.*, windows and gutters);
- building code required features (*e.g.*, smoke detectors, stairway handrails);

- standard space configurations (*e.g.*, foyer inside the front door, fireplace on exterior wall, kitchen adjacent to breakfast room, closets in the bedrooms, first floor half-bath accessible to all areas);

- basic common geometric shapes (*e.g.*, angled bay window rear breakfast area); and

- configurations (second floor bathroom above first floor half-bathroom).

(*Id.* at PageID 604–606.)

However, Kraly's reasoning is problematic.  It is so broad that no house design would qualify as an architectural work subject to copyright protection.  "[C]aselaw has consistently concluded that the overall form of architectural plans can be protected."  *Dorchen/Martin Assocs., Inc. v. Brook of Boyne City, Inc.*, No. 13-CV-10588, 2013 WL 5348627, at *6 (E.D. Mich. Sept. 24, 2013); *see also Compass Homes, Inc. v. Trinity Health Group, Ltd.*, No. 13-cv-647, 2016 WL 3406054, at *6 (S.D. Ohio June 21, 2016) ("It is well established that floor plans for a single family house are protectable.").  "[T]he originality of an architectural work is in the 'overall look and feel' of the design."  *Dorchen/Martin Assocs.*, 2013 WL 5348627, at *7.  "The house's perimeter, establishing dimension and shape—along with the juxtaposition and arrangement of interior walls, bedrooms, kitchens, bathrooms, windows, doors, laundry-rooms, porches, stairways, and corridors—produces a compilation of component parts that is original and unique."  *DeShano Cos.*, 2012 WL 4321313, at *7; *see also Dorchen/Martin Assocs.*, 2013 WL 5248627, at *6 (stating that "the overall design and arrangement of those component parts is not functionally required").  This Court and at least two other district courts have excluded Kraly's opinions in other cases to the extent he opined that Design Basics's home designs are not subject to any copyright protection.  *Design Basics, LLC v. Ashford Homes, LLC*, No. 1:17-cv-273, 2018 WL 6620438, at *14 (S.D. Ohio Dec. 18, 2018); *Forrester Wehrle Homes*, 302 F. Supp. 3d at 946 (calling Kraly's opinion an "impermissible and incorrect" legal conclusion);

*Design Basics, LLC v. Petros Homes, Inc.*, No. 1:14-cv-1966, 2017 WL 2842783, at *7 (N.D.

Ohio July 3, 2017) (excluding Kraly's opinion that plaintiff's copyrights are meaningless and of

no value), *reconsideration denied*, 2017 WL 2909709 (July 6, 2017).  This Court will not

consider Kraly's testimony to the extent he concludes that there are no protectable elements in

the Paterson and Lancaster designs.  There are protectable elements in the Paterson and

Lancaster designs, and the Court must determine if the Landmark Defendants have copied them.

     "[A] side-by-side comparison must be made between the original and the copy to

determine whether a layman would view the two works as substantially similar."  *Forrester*

*Wehrle Homes*, 302 F. Supp. 3d at 941 (citation omitted); *see also Kohus*, 328 F.3d at 856–57

(stating that substantially similar analysis is based on the judgment of the "intended audience[,]"

usually the "ordinary lay observer").  "[T]he touchstone of the analysis is the overall similarities

rather than the minute differences between the two works."  *Compass Homes*, 2016 WL

3406054, at *8 (citation omitted).  Courts rarely grant summary judgment to defendants in

copyright infringement actions because the substantial similarity analysis usually presents a close

dispute of fact.  *See Kohus*, 328 F.3d at 853; *Compass Homes*, 2016 WL 3406054, at *8;

*DeShano*, 2012 WL 4321313, at *15.

     Cuozzo, the senior designer for Design Basics, created graphic exhibits showing the

similarities of the overall size and footprints of the Paterson and Lancaster designs to the

Landmark Defendants' Beech Creek and Bedford, respectively, as well as the similarities in the

arrangement of the rooms.  For example, here are front elevations and the floor plans for Design

Basics's Lancaster (in blue) and the Berkey Homes' Bedford (in red), as well as a graphic

superimposing one floor plan on top of the other.



Lancaster



Bedford









SECOND FLOOR PLAN
1113 SF





(Doc. 72-2 at PageID 895, 904.)  The graphic images suggest that the overall composition of the designs and placement of the rooms in relation to one another are similar in the Lancaster and the Bedford designs.

McNicholas, Design Basics's expert, focuses on elective, non-functional design choices made by Design Basics in the Lancaster design to highlight the similarities.  For example, he points out that Design Basics used "a switchback stair condition which is more expensive and occupies more plan space than the conventional straight run of stairs."  (Doc. 73-1 at PageID 1008.)  He also states that the front hall closet is "typically . . . not located on an exterior wall, particularly at the front, where windows are typically located."  (*Id.*)  On the second floor, McNicholas states that Design Basics "increased the design complexity" of the side-by-side bedrooms by "adding the chamfered wall, creating oddly shaped rooms and favoring the path-of-travel over the room shape."  (*Id.*)  He points out that Design Basics installed a double height ceiling or clerestory at the entry, despite the "inefficiencies created with heating and cooling and maintenance."  (*Id.* at PageID 994, 1008.)  Finally, he identifies the "complexity" of the front bedroom design where the exterior wall of the bedroom "step[s] across" or juts out from the exterior wall plane of the other front rooms.  (*Id.* at PageID 1008.)  Each of these non-functional design choices also are present in the Bedford design.  (Doc. 72-2 at PageID 904.)  Gregory Neal, a former co-op designer for Landmark Communities, stated at his deposition that Design Basics's Lancaster design looked like the Landmark Defendant's Bedford design when he was shown a plan advertisement for the Lancaster.  (Doc. 75-1 at PageID 1083.)

Not surprisingly, Kraly, the Landmark Defendants' expert, identifies multiple differences between the Lancaster and the Bedford designs.  The Lancaster is more than 200 square feet smaller than the Bedford.  The Lancaster has steep-sloped reverse gables in the roof, but the

Bedford reverse gables are not steep-sloped. The Lancaster has casement windows, while the Bedford has double-hung windows. The Lancaster kitchen has an island, but the Bedford does not. The Lancaster garage has one door leading to the back yard, and it has a second door leading to a hallway with the half-bath on one side and then into the kitchen. The Bedford garage has only one door leading into a hallway with the half-bath on one side, the laundry on the other side, and then into the kitchen. The Lancaster master bedroom has two walk-in closets, but the Bedford master bedroom has only one walk-in closet. The area on the back exterior wall that is used as a second walk-in closet for the master bedroom in the Lancaster is used instead as a walk-in closet for the middle bedroom in the Bedford. The Lancaster master bathroom is compartmentalized with a separate room for the toilet and shower, but the Bedford master bathroom is an open floor plan. (Doc. 61-1 at PageID 615.)

The Court concludes that whether the Landmark Defendants' Bedford is substantially similar to the Design Basics's Lancaster is a disputed issue of material fact appropriate for a jury to resolve. The analysis is similar for Design Basics's Paterson and the Landmark Defendants' Beech Creek. (Doc. 61-1 at PageID 607; Doc. 72-2 at PageID 894, 903; Doc. 73-1 at PageID 1007.)[5] Based on this evidence, the Court holds that whether there is substantial similarity between Design Basics's Paterson and Lancaster designs and the Landmark Defendants' Beech Creek and Bedford designs, respectively, is a disputed issue of material fact appropriate for a jury.

---

[5] The Landmark Defendants' expert, Kraly, mistakenly compares Design Basics's Paterson to the Landmark Defendants' Muirfield instead of to the Beech Creek. However, it is possible to identify differences between the Paterson and Beech Creek without the aid of expert testimony. For example, the kitchen in the Paterson has a bay window, while the Beech Creek does not. Comparing the second floor of the two designs, the bedroom sizes are different, and the Paterson has the plumbing for the bath on an interior wall, while the Beech Creek has the plumbing on an exterior wall. (Doc. 72-2 at PageID 903.)

Accordingly, because the access and substantial similarity issues remain disputed, the Court will deny summary judgment to the Landmark Defendants on the copyright infringement claims.

**D.      DMCA Claims**

The DMCA provides in relevant part as follows:

(a) False copyright management information.--No person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement--

(1) provide copyright management information that is false, or

(2) distribute or import for distribution copyright management information that is false.

(b) Removal or alteration of copyright management information.--No person shall, without the authority of the copyright owner or the law--

(1) intentionally remove or alter any copyright management information,

(2) distribute or import for distribution copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law, or

(3) distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law,

knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.

17 U.S.C. § 1202.  Copyright management information ("CMI") includes "[t]he name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright."  17 U.S.C. § 1202(c)(3).  "A section 1202(b)(1) violation occurs when a person (i) without authority of the copyright owner or the law (ii) intentionally removes or alters any copyright management information (iii) knowing or having reasonable grounds to know that it will induce, enable, facilitate, or conceal an infringement of the federal copyright laws."  *Gordon v. Nextel Commc'ns & Mullen Advert., Inc.*, 345 F.3d 922, 927 (6th

Cir. 2003).  To establish a § 1202(b)(3) claim, the plaintiff must prove that the defendant "possessed actual knowledge of the unauthorized change to the copyright management information."  *Id.* at 926.

"A cause of action under Section 1202 potentially lies whenever ... [copyright management information] is falsified or removed, regardless of the form in which that information is conveyed."  *Shell v. Lautenschlager*, No. 1:15-cv-1757, 2017 WL 4919206, at *9 (N.D. Ohio Oct. 31, 2017).  However, it is important to note that "demonstrating copyright infringement does not in and of itself prove that a defendant removed CMI from a work."  *Id.* Copying or re-drawing virtually identical designs, but not including the original CMI, is not the same as altering or removing the CMI from the original design.  *Id.*

A plaintiff cannot prove a violation of the DMCA without first proving the ownership and access elements of a copyright infringement claim.  *Forrester Wehrle Homes*, 2018 WL 1583103, at *2.  The Court has concluded that Design Basics has established ownership of valid copyrights in the Paterson and Lancaster designs as a matter of law, but that genuine disputes of material fact remain on the issue of whether the Landmark Defendants had access to those Copyrighted Works.

Further, Design Basics's home design plans feature its CMI.  (Cuozzo Dec., Doc. 72 at PageID 866; Doc. 72-3 at PageID 921, 922.)  The allegedly infringing Beech Creek design includes a logo for Berkey Homes and the Bedford design contains the logo for Landmark Communities, but neither contain CMI for Design Basics.  (Cuozzo Dec., Doc. 72 at PageID 866; Doc. 58-9 at PageID 480–481; Doc. 59-9 at PageID 513–514.)  The Court concludes that genuine issues of material fact are in dispute whether the Landmark Defendants violated the DMCA by removing or changing Design Basics's CMI on the design plans.

**E.      The Landmark Defendants' Affirmative Defenses**

Finally, Design Basics seeks summary judgment on ten of the thirteen affirmative defenses asserted by the Landmark Defendants, numerated here as they are in the pleading: (1) failure to state a claim, (2) failure to join all necessary parties, (3) statute of limitations, (4) equitable estoppel, laches, acquiescence and/or waiver; (5) unclean hands; (6) "Defendants['] actions do not constitute infringement," (7) invalid copyright, (8) fair use, (9) infringing plans are not substantially similar, and (12) "Defendants deny that they acted in a willful, intentional, reckless manner."  (Doc. 59 at PageID 539–541.)[6]

The Landmark Defendants concede in their opposition brief that Design Basics is entitled to summary judgment on the defenses of (2) failure to join all necessary parties, (3) statute of limitations, (4) equitable estoppel, and (8) fair use.  (Doc. 71 at PageID 857.)  The Court will grant summary judgment to Design Basics on those affirmative defenses.

The Landmark Defendants have not responded to Design Basics's arguments concerning, nor did they provide any evidence supporting, the purported affirmative defenses of (5) unclean hands; (6) "Defendant['] actions do not constitute infringement," (9) infringing plans are not substantially similar, and (12) "Defendants deny that they acted in a willful, intentional, reckless manner."  The Court will grant summary judgment to Design Basics on the (5) unclean hands defense.  However, whether the Landmark Defendants' actions constitute infringement, whether the accused infringing plans are substantially similar to the Copyrighted Works, and whether the Landmark Defendants acted willfully are all elements Design Basics must prove to establish its

---

[6] Design Basics did not move for summary judgment on the following affirmative defenses:  (10) misuse of copyright, (11) the Copyrighted Works are in the public domain, and (13) reservation of rights to assert other affirmative defenses.  (*Id.*)

claims. These issues are mis-labeled as affirmative defenses by the Landmark Defendants. The Court will not address the issues (6), (9), and (12) as affirmative defenses.

Lastly, the Landmark Defendants oppose the granting of summary judgment on their affirmative defenses of (1) failure to state a claim upon which relief can be granted and (7) invalid copyright. The Landmark Defendants point out that Design Basics had only pre-AWCPA copyright protection on the Paterson and Lancaster designs and argue that the copyrights protect only blueprints containing sufficient detail to construct the homes. They further contend that they are accused of copying non-blueprint, simplified images of the designs—images not protected by the copyrights—and that their defenses are valid for that reason. (Doc. 58 at PageID 346–347; Doc. 58-8 at PageID 480–481; Doc. 58-9 at PageID 512–513.)

The Certificates of Registration describe the "Nature of this Work" as "Blueprints" for both the Paterson and Lancaster designs. (Doc. 63-1 at PageID 648; Doc. 63-7 at PageID 753.) The Landmark Defendants argue that Design Basics only copyrighted the Paterson and Lancaster designs to the extent they contain detailed blueprints sufficient to allow construction of the architectural work. Under the pre-AWCPA, the Paterson and Lancaster copyrights protect against copying the blueprints or design plans, but do not extend protection to the architectural works themselves. *Scholz Design*, 691 F.3d at 189. The problem with Design Basics's argument is that the copyright paperwork for the Paterson and the Lancaster includes more than just architectural blueprints. It contains architectural drawings, simplified floor plans, and front elevation images for both Copyrighted Works. (Doc. 63-1 at 646–660; Doc. 63-7 at PageID 753–767.) The graphic representations of the Landmark Defendant's Beech Creek and Bedford are similarly detailed to the floor plans and front elevation images for the Paterson and the

Lancaster found in the copyright paperwork. This argument fails factually. Therefore, to the extent that the Landmark Defendants asserted affirmative defenses (1) and (7) based on an argument that the pre-AWCPA copyrights for the Paterson and the Lancaster extended only to architectural blueprints, the Court grants summary judgment on those two defenses to Design Basics.

To summarize, the Court will grant summary judgment to Design Basics on the following affirmative defenses: (1) failure to state a claim, (2) failure to join all necessary parties, (3) statute of limitations, (4) equitable estoppel, laches, acquiescence and/or waiver; (5) unclean hands; (7) invalid copyright, and (8) fair use. The Court does not address as affirmative defenses the mis-labeled issues of (6) "Defendants['] actions do not constitute infringement," (9) infringing plans are not substantially similar, and (12) "Defendants deny that they acted in a willful, intentional, reckless manner."

## V. CONCLUSION

For the foregoing reasons, Design Basics's Motion for Relief of Court's [Summary Judgment] Order (Doc. 89) is **GRANTED**.

Design Basics's Motion for Partial Summary Judgment (Doc. 65) is **GRANTED IN PART AND DENIED IN PART**. Summary judgment is granted to Design Basics on the issue of ownership of valid copyrights in the Paterson and Lancaster designs and on affirmative defenses (1), (2), (3), (4), (5), (7), and (8).

The Landmark Defendants' Motion for Summary Judgment (Doc. 66) also is **GRANTED IN PART AND DENIED IN PART**. As stated in the initial Summary Judgment Order, summary judgment is granted to PR Properties and Orchard Meadows on all claims asserted against them. Also as stated in the initial Summary Judgment Order, summary

judgment is granted to Paul Berding, Landmark Communities, Ronald Gehrlich, Kelly Homes, Matthew Berding, and Berkey Homes on all claims based on the Bermier, Ingram, Pawnee Point, Collier, and Linden Copyrighted Works.  However, for the reasons stated herein, summary judgment is denied to Paul Berding, Landmark Communities, Ronald Gehrlich, Kelly Homes, Matthew Berding, and Berkey Homes on all claims based on the Paterson and Lancaster Copyrighted Works.

**IT IS SO ORDERED.**

Dated this 21st day of August, 2019.

BY THE COURT:

S/Susan J. Dlott
Susan J. Dlott
United States District Judge